**B.J.K., Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 2000.

Decided April 27, 2001.

---

B.J.K., petitioner, pro se.

Cynthia N. Keller, Philadelphia, for intervenor, Phila. County Dept. of Human Services.

Before PELLEGRINI, Judge,
FLAHERTY, Judge and JIULIANTE,
Senior Judge.

FLAHERTY, Judge.

B.J.K. petitions, pro se, for review of a decision of the Bureau of Hearings and Appeals (BHA) for the Department of Public Welfare (DPW) which adopted the recommendation of the hearing official that denied B.J.K.'s petition for expungement of an indicated report of child abuse pursuant to the Child Protective Services Law (Law), Act of December 19, 1990, P.L. 1240, *as amended,* 23 Pa.C.S. §§ 6301–6385. We affirm.

On December 18, 1995, the Philadelphia County Children and Youth Agency (CCY) received a report of suspected child abuse regarding J.K., a fourteen-year-old girl. At the time of the alleged incident, J.K. lived with her parents, S.K. and B.J.K, and her three siblings. The report alleged that J.K.'s mother, B.J.K., struck J.K. with a belt and her hand, resulting in bruises on her face, nose, and chin, a busted lip,

bruised hand, swollen index finger and bruised shoulder.

CCY investigated the report and filed an indicated report of abuse. B.J.K. requested that DPW expunge the indicated finding from the records of the State Central Registry. DPW denied this request, and an expungement hearing was held on August 27, 1997, and October 17, 1997.

CCY presented the testimony of Maria LaBey (LaBey), the caseworker assigned to this case. LaBey testified that a report was made to CCY regarding B.J.K. and that she was assigned to do the investigation. Notes of Testimony (N.T.), August 27, 1997, at 40–41. LaBey testified that she interviewed J.K. at her friend Donna Markley's (Ms. Markley) home. N.T. at 49. LaBey stated that J.K. had a cut on her upper lip and that it was swollen, a cut on her nose, which was red and swollen, a cut on her index finger, which was red and swollen, and a cut on her chin. N.T. at 50–53. J.K. was also had a sore right shoulder, but there was no visible injury. N.T. at 53–54. LaBey testified that J.K.'s injuries hurt a lot, that she was afraid of her mother, and that her mother had hit her before, but this was the first time she sustained injuries. N.T. at 57–58, 65.

Next, CCY presented the testimony of Mrs. Donna Markley (Mrs. Markley), the mother of J.K.'s friend. Mrs. Markley testified that J.K. came to her home instead of going to her own home the day she was injured. Mrs. Markley stated that J.K. had, among other things, a cut lip. Mrs. Markley further testified that J.K. had told her that her mother hit her and that she had hit her before. N.T. at 167–168, 171. Mrs. Markley stated that J.K. was nervous, upset, shaking and afraid to go home. N.T. at 181

CCY then presented the testimony of Ms. Markley, a friend of J.K. Ms. Markley testified that when J.K. got to school the day of the incident that she had a broken lip, possibly two bumps on her head, and scratches. N.T. at 204. Ms. Markley stated that J.K. told her about a fight with her mother, and that her mother hit her and she was afraid to go home. N.T. at 205. Ms. Markley stated that she sat with J.K. in the hallway of the school all day; that neither of them attended classes that day. N.T. at 214–215. Ms Markley took J.K. home with her after school because J.K. was afraid to go home to her mother. N.T. at 220.

CCY presented the testimony of Regina Mitchell (Mitchell), superintendent at Saul High School. Mitchell testified that on the day of the incident she met with J.K. That J.K. was "very distraught...crying and very upset, and she had bruises on her face. And after I examined her further I saw she had them on her shoulder and also [her] hand." N.T. at 235–236. Mitchell further testified that her right hand was bruised, red and swollen, that her nose was bruised, red, swollen, and looked like it had bled. That her nose and mouth were swollen and she had bruises on her lip, and her lip was swollen with broken, red skin, and she had bruises on her chin. N.T. at 237.

Mitchell testified that she spoke with J.K. in her office. That J.K. explained that her mother "beat" her and she was afraid to go home. N.T. at 238–239, 262. Mitchell also stated that she offered to take J.K. to the doctor, that J.K. refused, but asked to lie down. Mitchell took J.K. to the nurse's office to lie down and gave her ice to put on her lip for the swelling. Mitchell stated that J.K. flinched when she put the ice on her lip. N.T. at 247, 250. Mitchell noted that J.K. was not in any emotional condition to do schoolwork that day. N.T. 254.

Finally, CCY presented the testimony of J.K., the allegedly abused child. J.K. testified that her mother hit her "in the face a couple of times with.... She had hit me with her hand at first, and then she hit me with her belt." N.T., October 17, 1997, at 12. J.K. stated that she received a couple of cuts and a bruised finger. N.T. at 12. J.K. also testified that she did not feel any pain. N.T. at 14. J.K. stated that she went to the nurse for a band-aid for her finger so she would be allowed in her class, that the nurse was out so she went to the counselor who did not have a band-aid, so then she went to the principal, that she did not go to the principal in order to report her mother. N.T. at 15. J.K. stated that it was her fault that her mother had to hit her and she was not afraid to go home. N.T. at 12, 18.

B.J.K. testified on her own behalf regarding the incident of December 18, 1995. B.J.K. stated that J.K. was leaving for school when she stopped her and told her to go back upstairs and get herself "back together". N.T. at 90. They had words, J.K. swore at her a few times and B.J.K. gave her a backhand. N.T. at 90–93. J.K. pushed past B.J.K., swung at her, and then started up the stairs. N.T. at 93. B.J.K. stated that she followed J.K. up the stairs and into her room, grabbing a belt on the way. N.T. at 93–94. B.J.K. continued to scream at J.K. and J.K. continued to swear at B.J.K. Once in J.K.'s room, B.J.K. screamed some more and then "took the belt and I swung it at her." N.T. at 96. J.K. threw something toward her bed, told B.J.K. that she didn't have to listen to her, and then B.J.K. started swinging again. N.T. at 97–98. B.J.K. stated that J.K. was right in front of her, with her back to her. N.T. at 98. B.J.K. stated that she "hit her across the back" with the belt. N.T. at 99. That J.K. was crouched on the ground while she was hitting her with the belt.

N.T. at 99–100. B.J.K. further testified that:

[A]s she's down there like that I swung again still screaming still saying, you will not act like that in here and you will not talk to me like that.... I swung again, same way, same manner, picked it up swung at her backward. J.[K.] was down like this [head crouched toward her knees].... I'm swinging the belt and J.[K.] comes like this and goes get off of me, you bitch. Again, even in defiance of everything that I said to her....

N.T. at 100–103. B.J.K. indicated that J.K. turned as she came up, that she was ready to hit her again with the belt and J.K. was looking at her. "She was defiantly looking me in the face when she said that next, you bitch." N.T. at 103–104. B.J.K. stated that J.K.'s hand was up in front of her head to protect herself. N.T. at 104. B.J.K. testified that she did not intend to hit J.K. across the face, that she was only disciplining her and that she did not intend to hurt her. N.T. at 106–107.

B.J.K. presented the testimony of Reverend George Lowar, Theresa Venhaus, and Catherine Finnegan. They each testified as to the character of B.J.K. That B.J.K. is a good wife and neighbor, a good mother, and extremely devoted to her children. They also testified that B.J.K. is a peaceful, law-abiding citizen.

On March 24, 1998, the hearing examiner recommended that B.J.K's appeal be denied. On April 3, 1998, DPW adopted this recommendation in its entirety. B.J.K. requested reconsideration and by Final Order dated December 10, 1999, the DPW upheld the April 3, 1998, order. B.J.K. appeals to our Court.

 B.J.K. contends that the BHA improperly denied her request for expungement or amendment of a child abuse report as B.J.K. demonstrated that she only

intended to strike J.K. on the buttocks with the belt, that she only intended to use a reasonable amount of corporal punishment and that J.K. suffered little or no injury or pain.

■ An "indicated report" is defined as:

A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

(1) Available medical evidence.

(2) The child protective service investigation.

(3) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303. The county agency bears the burden of proof in an expungement case. *York County Children and Youth Services v. Department of Public Welfare,* 668 A.2d 185 (Pa.Cmwlth.1995). To discharge this burden, the county agency must show by evidence which outweighs any contrary evidence that B.J.K.'s actions constituted child abuse. *Id.* Child abuse is defined in pertinent part as follows:

Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

23 Pa.C.S. § 6303. Serious Physical injury is defined in pertinent part as follows:

An injury that:

(1) causes a child severe pain; or

(2) significantly impairs a child's physical functioning, either temporarily or permanently.

23 Pa.C.S. § 6303. Parents or guardians may use corporal punishment to discipline their children absent a substantial risk of death, disfigurement, serious bodily injury, gross degradation, extreme pain or mental distress, and provided that the parent does not act with malicious intent in punishing the child. *Boland v. Leska,* 308 Pa. Superior Ct. 169, 454 A.2d 75 (1982). It is irrelevant what item was used to inflict J.K.'s injuries. What is relevant is whether J.K. suffered a serious injury which was not accidental.

■ The Secretary of DPW or his proper designee is to be considered the ultimate arbiter of fact. *G.S. v. Department of Public Welfare,* 104 Pa.Cmwlth. 84, 521 A.2d 87 (1987). Our sole issue for review is whether the DPW's denial of the expungement of the indicated report is supported by substantial evidence, accords with the law, and does not violate petitioner's constitutional rights. *B.E. v. Department of Public Welfare,* 654 A.2d 290 (1995). Substantial evidence in the context of a child abuse expungement proceeding is "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303.

The hearing examiner, whose decision and reasoning were adopted by the DPW, stated that the indicated report could not be expunged because:

The injuries were clearly identifiable and testified to by five (5) persons, including the Appellant herself. Medical attention was offered to the child by the Vice–Principal of her school who graphically described the distress the child obviously felt. J.K. did not carry out her normal activities on the day in question; she spent most of the school day lying down in the nurse's office, and did not deny she had pain on the day of the incident, in fact, she said her injuries hurt a lot.

The Attorney Examiner finds the testimony of the Vice–Principal, Ms. Mitchell, at the child's school especially compelling. She described the child's

injuries in great detail, described the pain J.K. apparently felt when ice was applied to her wounded lip, stated that she offered the child medical assistance which the child declined, placed the child in the nurse's office and allowed her to lie down, and then monitored her condition through most of the school day. (FF# 19 through 27)

A fair recounting of the evidence shows that B.J.K. became very angry with J.K. when J.K. disregarded her mother's admonitions regarding her cleanliness and appearance; that she first struck J.K. with her hand and then followed her upstairs into her room with a belt, beating her about the face and body; the child was down and trying to protect herself with her arm; and the Appellant's conduct produced the above detailed injuries. By her own admission, the Appellant was screaming at the child while she beat her and the child "was defiantly" looking B.J.K. in the face while trying to protect herself from the Appellant's attack. The injuries to J.K's face and hands confirm the Appellant's admission. The Appellant might have the right to exercise reasonable discipline, but the evidence does not show that the discipline was reasonable in this case.

. . . .

Based on the nature and extent of the injuries proven in this case, a close examination of the circumstances set forth above, and the age of the victim at the time of the incident, i.e., a young girl just seventeen (17) days past the age of 13 years, the Attorney Examiner concludes that the child suffered serious injuries which caused her severe pain.

Hearing Examiner Decision, at 10.

In determining whether substantial evidence exists to support a finding of fact this Court is to give to the party in whose favor the appealed decision was rendered—in this case, the CCY—the benefit of all inferences that can logically and reasonably be drawn from the evidence. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). A child's testimony is not necessary for a finding that the child suffered severe pain as the result of injuries inflicted upon him, such a finding can be supported by circumstantial evidence. *D.N. v. Commonwealth of Pennsylvania, Department of Public Welfare,* 127 Pa.Cmwlth. 580, 562 A.2d 433 (1989). CCY presented the testimony of the caseworker, J.K.'s friend, the principal at J.K's school, and the mother of J.K.'s friend. All of this testimony was consistent and supported the BHA's findings.

When the fact-finder has determined the weight and credibility of evidence, this Court will not disturb such determinations on review. *S.T. v. Department of Public Welfare, Lackawanna County Office, Children Youth and Family Services,* 681 A.2d 853, 856 (Pa.Cmwlth. 1996), *appeal denied,* 547 Pa. 747, 690 A.2d 1165 (1997). The primary issue here is whether B.J.K.'s acts caused nonaccidental serious physical injury to the minor, J.K. Although the hearing examiner and DPW clearly set forth serious physical injuries caused by B.J.K. they focused on the involvement of the emotion of anger on B.J.K.'s part rather than on the statutory criteria of whether or not B.J.K.'s acts were nonaccidental.

In *P.R. v. Department of Public Welfare,* 759 A.2d 434 (Pa.Cmwlth.2000), we found that a serious physical injury was caused by a blow of a belt but, the blow being single and unanticipated, was accidental. B.J.K.'s acts consisted of multiple, repeated blows from the first floor to the second floor rather than a spontaneous reaction to the child's conduct.

Therefore the testimony taken as a whole is consistent with the BHA's findings. B.J.K.'s acts, as found by the BHA, clearly support the conclusion that B.J.K. physically abused J.K., that J.K. suffered severe pain and physical injuries that were nonaccidental.

Therefore, DPW was correct in concluding that the indicated report of child abuse was in accordance with the law.

Accordingly, we affirm.

### ORDER

AND NOW, this 27th day of April, 2001, the order of the Bureau of Hearing and Appeals for the Department of Public Welfare in the above-captioned matter is affirmed.