J-S58015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  D.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  R.B. | |
| | No. 520 WDA 2014 |

Appeal from the Order Entered February 26, 2014
in the Court of Common Pleas of Beaver County
Criminal Division at No.: 180-CP-04-DP-040-2013

| | |
|---|---|
| IN THE INTEREST OF:  C.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  R.B. | |
| | No. 521 WDA 2014 |

Appeal from the Order Entered February 26, 2014
in the Court of Common Pleas of Beaver County
Criminal Division at No.: 302-2006, Case No. 130453, CP-04-DP-508

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED SEPTEMBER 24, 2014**

_____

[*] Retired Senior Judge assigned to the Superior Court.

R.B. (Mother) appeals from the orders dated February 25, 2014, and entered February 26, 2014, which adjudicated her minor children, D.A. (born in December of 2008) and C.A. (born in January of 2005), dependent and ordered that they remain in foster care.[1] We affirm.

On November 1, 2013, Beaver County Children and Youth Services (CYS) filed applications for emergency protective custody of D.A., C.A., and their older brother, Q.A. In the applications, CYS alleged that Mother had been incarcerated after she bit Q.A. and struck him with a wooden umbrella handle, and that she was unable to care for the children. CYS also filed dependency petitions.

As a result, the trial court issued orders for emergency protective custody, and the siblings were removed from Mother's care. A shelter care hearing followed soon after, and the children remained in the custody of CYS. According to the trial court, CYS withdrew the allegations of dependency related to Q.A. after he turned eighteen. (**See** Trial Court Opinion, 4/25/14, at 3). However, CYS filed a Petition to Amend Dependency Petition, which the court granted on January 30, 2014. The trial court states that the amended dependency petition, which is not

_____

[1] D.A. and C.A's biological father, A.A. (Father), is not a party to the instant appeal. Father appears to have played a minimal role in the children's lives, and did not appear at any point during the underlying proceedings, despite efforts to insure that he was given adequate notice. (**See** N.T. Hearing, 2/18/14, at 81-82, 117-19, 126-27).

contained in the certified record, included new allegations that Mother had been neglecting D.A. and C.A., and disciplining them inappropriately. (***See id.*** at 3-4).

Dependency hearings were held on February 18 and 25, 2014. During the hearings, the trial court heard the testimony of both C.A. and Q.A. D.A. did not testify. The court also heard the testimony of CYS employees Jennifer Wright and Denise Dymond.

When asked about alleged acts of violence perpetrated by Mother, C.A. described two occasions when Mother "whooped" her. (***See*** N.T. Hearing, 2/18/14, at 15, 17-19, 37). During the first occasion, C.A. explained that Mother had pulled down C.A.'s pants, leaving her underwear on, and struck her three times with a belt. (***See id.*** at 17-19). C.A. indicated that this incident followed an argument that Mother had with Father. (***See id.*** at 14-16).

C.A. described a second incident of "whooping." During this incident, Mother struck C.A. several times with a blue broomstick. (***See id.*** at 19, 37). C.A. stated that Q.A. intervened and stopped the "whooping." (***See id.*** at 38). C.A. claimed that she was left bleeding after Mother struck her, but admitted that the bleeding resulted from a cut that existed prior to the incident. (***See id.*** at 56). C.A. explained that this incident was a result of her accidently starting a fire in the house with a lighter. (***See id.*** at 37). C.A. noted that Mother used lighters to smoke "weed." (***Id.*** at 20). C.A.

testified that she was afraid to live with Mother because Mother "might do it again," meaning "whoop" her. (*Id.* at 33). In addition to these incidents, C.A. stated that Mother had threatened to "punch [her] in the face" during the previous Christmas, and that Mother had, in fact, punched C.A. in the face before. (*Id.* at 22).

C.A. also testified about an incident of alleged sexual abuse. C.A. claimed that a tall, skinny man with black hair and a tattoo on his left arm touched her inappropriately when she was seven years old. (*See id.* at 38-39, 42-43). C.A. claimed that she told Q.A. about the incident, but that she did not tell Mother because she was "too afraid that [Mother] wouldn't believe [her]." (*Id.* at 44; *see id.* at 39). C.A. indicated that the incident took place while Q.A. was babysitting her. (*See id.* at 58).

Q.A.'s testimony largely corroborated that of C.A. Q.A. confirmed that he observed an incident during which Mother struck C.A. with "a wooden stick." (*Id.* at 124). Q.A. claimed that Mother was "constantly beating her," and, "[i]f I wasn't there, she probably would have end[ed] up in the hospital." (*Id.*). Q.A. testified that he told C.A. to "hop in the shower" afterward, "just to clean all of the dried up blood and everything." (*Id.* at 124-25).

Q.A. also testified that C.A. told him about the alleged sexual abuse, but indicated that it took place during a period of time when Q.A. had been kicked out of the house, and that he was not babysitting her when it

happened. (*See id.* at 122). Q.A. stated that he tried to tell Mother about the abuse, but that "she didn't really want to listen to [him]." (*Id.* at 123). Q.A. claimed that he could point out the perpetrator if he saw him again. (*See id.* at 157-59). When asked about his brother, D.A., Q.A. agreed that he is a "special needs child," who is "nonverbal" and "autistic." (*Id.* at 133).[2] Q.A. claimed that Mother did little to care for D.A., and that he had been the one "taking care of him and giving him time and . . . giving [D.A.] love that he needed." (*Id.*).

Following these hearings, the trial court entered its orders adjudicating D.A. and C.A. dependent on February 26, 2014. Mother timely filed notices of appeal on March 27, 2014, along with her concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2), (b). *See* Pa.R.A.P. 1925(a)(2), (b). The Court filed an opinion on April 25, 2014. *See* Pa.R.A.P. 1925(a).

Mother now presents the following issues for our review.

1. Is it appropriate for [CYS] to remove two minor children from [Mother's] home when the removal was due to the unavailability of [Mother] because of her temporary incarceration as a result of an incident with a third child, and did [CYS] exercise reasonable efforts to eliminate the need for removal of the children once [Mother] was released on bail?

---

[2] This description of D.A. was confirmed by Denise Dymond. (*See* N.T. Hearing, 2/18/13, at 107).

2. Did [CYS] satisfy the burden of proof in the dependency proceeding to demonstrate by clear and convincing evidence that the children met the statutory definition of dependent?

3. Is it appropriate for the [trial c]ourt to rely on instances of inappropriate discipline of a child to support a finding of dependency, and if so, was there clear and convincing evidence of inappropriate discipline of the child so as to support a finding of dependency in this case?

4. Is it appropriate for the [trial c]ourt to rely on instances of failure to supervise a child to support a finding of dependency, and if so, was there clear and convincing evidence to establish instances of failure to supervise the child so as to support a finding of dependency in this case?

5. If only one instance of failure to supervise the child can be established with clear and convincing evidence, is that one instance sufficient to support a finding of dependency?

6. In this case, was it an error for the [trial c]ourt to find that the sibling of [C.A.] was dependent solely based upon the finding that [C.A.] was dependent?

(Mother's Brief at 4-5).[3]

Our Supreme Court set forth our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.,* . . . 9 A.3d 1179, 1190 ([Pa.] 2010) (citation omitted).

---

[3] While Mother lists six issues for our review, her brief contains only four separate argument sections. *See* Pa.R.A.P. 2119(a).

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.,* 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family whenever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* 405 Pa.Super. 156, 592 A.2d 55, 57 (1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

In regard to when a child should be removed from parental custody, we have stated:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In re K.B.,* . . . 419 A.2d 508, 515 ([Pa. Super.] 1980) (citations omitted). In addition, this Court has stated: "[I]t is

- 7 -

not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from her family was clearly necessary." *In re S.S.*, . . . 651 A.2d 174, 177 ([Pa. Super.] 1994).

*In re A.B.*, 63 A.3d 345, 349-50 (Pa. Super. 2013).

In her first issue, Mother argues that the trial court "erred by not finding that CYS made a determination of custody" by failing to return C.A. and D.A. to her after she was released from jail, but prior to the dependency hearings. (Mother's Brief at 13). Mother contends that CYS "failed to make reasonable efforts to return" D.A. and C.A. to her care during this period. (*Id.*). The trial court explains that the children's continued placement in foster care after Mother's release was necessary due to, *inter alia*, the new allegations of abuse against C.A. (Trial Ct. Op., at 9-10).

We conclude Mother's claim is without merit. Even if the trial court did err by failing to order C.A. and D.A. returned to Mother after her release from incarceration, the trial court later adjudicated both children dependent and concluded that they should remain in foster care. It appears that the children would have been removed from Mother's custody after being adjudicated dependent, regardless of whether they were returned to her prior to the dependency hearing. No relief is due.

Mother's next claim is that the trial court abused its discretion by adjudicating C.A. and D.A. dependent based on Mother's means of disciplining of C.A. (**See** Mother's Brief at 13-17). Mother directs our attention to the statutory definition of "child abuse," and argues that her

conduct did not rise to the level of "abuse." (*Id.* at 14 (citing 23 Pa.C.S.A. § 6303)). Mother then cites to several cases supporting the proposition that corporal punishment may be used by a parent to discipline his or her child. (*See id.* at 15-16 (citing *Chronister ex rel. Morrison v. Brenneman*, 742 A.2d 190 (Pa. Super. 1999); *B.J.K. v. Department of Public Welfare*, 773 A.2d 1271 (Pa. Cmwlth. 2001); *In re S.M.*, 614 A.2d 312 (Pa. Super. 1992); *J.S. v. Com., Dept. of Public Welfare*, 565 A.2d 862 (Pa. Cmwlth. 1989))).

In response, the trial court explains that the testimony presented at the dependency hearing established that Mother had employed "undue force against [C.A.] when disciplining her," and that Mother's actions put C.A.'s safety at risk. (Trial Ct. Op., at 7; *see id.* at 8). The trial court emphasizes the testimony of C.A. and Q.A. that Mother had attacked C.A. with a broomstick, and credits Q.A.'s claim that the beating was so severe that "if [he] had not stopped the beating, it is likely that [C.A.] would have ended up in the hospital." (*See id.* at 7).

We discern no abuse of discretion in the trial court's reasoning. First, while Mother is correct that "no determinations of child abuse have been made" in this case, (Mother's Brief at 16), a finding of child abuse as codified at 23 Pa.C.S.A. § 6303 is not necessary to support an adjudication of dependency. *See In re R.R.*, 686 A.2d 1316, 1317 (Pa. Super. 1996)

("[T]he Juvenile Act does not require proof that a parent has committed or condoned abuse before a child can be found dependent.").

Additionally, we agree with the trial court that Mother's alleged conduct in the present matter went well beyond the acceptable limits of corporal punishment. Q.A. testified that, during the incident with the broomstick, Mother was "constantly beating [C.A.]," and that he had to intervene. (N.T. Hearing, 2/18/14, at 124). While Mother points out in her brief that C.A. did not suffer any lasting injuries as a result of this incident, (*See* Mother's Brief at 16), the record supports the trial court's determination that such injuries may have been inflicted had Mother not been stopped. (*See* N.T. Hearing, 2/18/14, at 124). Thus, we agree that Mother's methods of "disciplining" C.A. place her health, safety, and welfare, at risk. *See* 42 Pa.C.S.A. § 6302. Mother is not entitled to relief on her second issue.

Mother argues next that the trial court abused its discretion by concluding that C.A. was dependent based on Mother's alleged failure to provide adequate supervision for her. (Mother's Brief at 17-20). Mother contends that the testimony of C.A. and Q.A. was inconsistent and incredible, and that CYS failed to establish that C.A. was ever touched inappropriately. (*See id.* at 19).[4]

_____

[4] Mother lists the following inconsistencies in her brief:
*(Footnote Continued Next Page)*

The trial court acknowledges that there were "minor discrepancies" in C.A.'s testimony. (Trial Ct. Op., at 12). Nonetheless, the court observes that "[C.A.'s] story throughout this case has been substantially consistent[,]" and explains that it "believed the weight of all of the testimony supported a clear and convincing finding" that the children were dependent. (*Id.* at 11-12). The trial court credits C.A.'s claim that she had been touched inappropriately, as well as Q.A.'s assertion that he attempted to tell Mother about the alleged abuse of C.A., but that Mother "did not want to listen to him." (*Id.* at 10 (citing N.T. Hearing, 2/18/14, at 123); *see id.* at 8, 12).

*(Footnote Continued)* ─────────────────

> First, [C.A.] said she was touched only once, then she told the [trial c]ourt that it had actually happened twice. Then she admitted that she had never seen the man again. [C.A.] told the [trial c]ourt she had been touched by one of her mother's friends, but then admitted that her mother wasn't even home, and she was actually being baby-sat by [Q.A.], who also knew exactly what the man looked like and where to find him. [C.A.] then further admitted that she had actually never seen her mother bring this man into the home. In addition, [Q.A.] testified that he tried to tell his mother about the abuse on [sic] [C.A.], but she dismissed it and did not report it to the proper authorities. However, when asked about her knowledge of the incident, the intake caseworker testified that [Mother] adamantly denied knowing that her daughter had ever been sexualized or touched in any way, and denied knowing that anyone in her home would have touched her daughter.

(Mother's Brief at 19) (citations to the record omitted). Mother also highlights C.A.'s admission during cross examination that she would tell "a little white lie" to get what she wants. (*Id.* at 20 (quoting N.T. Hearing, 2/18/13, at 63)).

In its opinion, the court also expresses concern that C.A. was able to obtain a lighter and start a fire in her home, and explains that this too is indicative of Mother's neglect. (*See id.* at 12).

We again conclude that the trial court did not abuse its discretion. As noted above, our standard of review requires us to "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *R.J.T.*, at 1190. Here, the trial court was free to weigh the testimony presented at the dependency hearing, and to accept and reject this testimony as it saw fit. No relief is due on Mother's third issue.[5]

Mother's final argument is that the trial court abused its discretion by adjudicating D.A. dependent based solely on its finding that C.A. was dependent. (*See* Mother's Brief at 21). In support of this argument, Mother directs our attention to the general rule that "[a] child should not be found to be dependent merely because a sibling has been adjudicated dependent."

_____

[5] Mother also suggests, as part of her second and third arguments, that this Court should find certain portions of the dependency hearing testimony credible, and reverse on that basis. Specifically, Mother observes that Q.A. testified that C.A. had been "whooped" only once, because he believed that C.A. would have told him about any additional incidents if they had occurred. (Mother's Brief at 17 (citing N.T. Hearing, 2/18/13, at 125)). Mother also points out that C.A. testified that she was being supervised by Q.A. at the time the inappropriate touching occurred. (*See id.* at 20 (citing N.T., 2/18/13, at 58)). Mother suggests that this and other testimony proves that Mother was not responsible for the sexual abuse allegedly suffered by C.A. (*See id.*). These arguments also are contrary to our standard of review, and it is not our role as an appellate court to make credibility determinations based on a cold record. *See S.K.C. v. J.L.C.*, 94 A.3d 402, 414 (Pa. Super. 2014).

(*Id.* (quoting *In re G.T.*, 845 A.2d 870, 872 (Pa. Super. 2004)). The trial court acknowledges this general rule, but explains that it concluded that D.A. was dependent because "Mother's actions, *i.e.* her inappropriate discipline, her unwillingness to listen to the allegations of sexual abuse of her daughter and follow up on those allegations, also placed [D.A.] at risk." (Trial Ct. Op., at 12). The trial court emphasizes that D.A. is a "special needs child, who is nonverbal, and therefore, unable to discuss whether any abuse had occurred," and expresses its fear that "if he were the only child left at home . . . Mother may take her frustrations and anger out on him." (*Id.* at 12-13).

Once again, we discern no abuse of discretion. "It is well-settled that 'a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent.'" *In re E.B.*, 83 A.3d 426, 433 (Pa. Super. 2013) (citation and internal quotation marks omitted). Moreover, as observed by the trial court,

> [i]n determining whether siblings are also dependent, the focus is not on whether the other siblings are actually at risk of abuse themselves. Rather, the key question is whether the siblings fit the broader definition of lacking 'proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals.' 42 Pa.C.S.A. § 6302.

(Trial Ct. Op., at 12 (quoting *In re M.W.*, 842 A.2d 425, 429 (Pa. Super. 2004) (some quotation marks omitted)).

- 13 -

In ***M.W.***, a panel of this Court held that five siblings of a child who had been sexually abused at the hands of her father could be adjudicated dependent, even though there was no evidence that the siblings were at risk of being sexually abused themselves. ***See M.W.***, ***supra*** at 429-30. Similarly, in ***G.T.***, ***supra***, we held that a child could be adjudicated dependent where her parents failed to seek medical treatment for the child's sister, resulting in permanent brain damage. ***See G.T.***, ***supra*** at 871. We reasoned, "[i]t is of no moment that the 'abuse' in the present case is parental neglect of T.G.'s sister. The Juvenile Act and ***M.W.*** allow us to assume that any medical problem T.G. might have developed would have been similarly ignored." ***Id.*** at 874. Most recently, in ***E.B.,*** ***supra***, a panel of this Court affirmed an adjudication of dependency where the juvenile court expressed concern that E.B.'s father would not be able to care for her due to her special medical needs. ***See E.B.***, ***supra*** at 433 (citation omitted). We concluded that the court did not abuse its discretion, even though the court's concerns resulted from Father's alleged physical abuse of E.B.'s siblings. ***See id.*** at 433-34.

Given this case law, the trial court acted reasonably by adjudicating D.A. dependent, based on its conclusion that D.A. fit the broader definition of lacking proper parental care or control, and based on its fear that D.A. would suffer abuse if he were returned to Mother. (***See*** Trial Ct. Op., at 12-13 (citation and quotation marks omitted)).

Accordingly, having found no merit to any of Mother's claims, we affirm the orders adjudicating D.A. and C.A. dependent.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014