American Airlines, Inc. and : 
New Hampshire Insurance Co., : 
              Petitioners : 
             : 
        v. : 
             : 
Chris Brown (Workers' : 
Compensation Appeal Board), :   No. 356 C.D. 2021
           Respondent :   Submitted: November 5, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: February 9, 2022


        American Airlines, Inc. and New Hampshire Insurance Co. (collectively, Employer) petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) March 5, 2021 order affirming the WC Judge's (WCJ) decision that granted Chris Brown's (Claimant) Claim Petition and directed Employer to reimburse Claimant's litigation costs. Employer presents two issues for this Court's review: (1) whether the WCJ erred by finding that Claimant met his burden of proving that he is entitled to specific loss benefits for the loss of his right eye for all practical intents and purposes, as well as the permanency of the loss;[2] and (2) whether the WCJ erred by denying Employer's objection to the rebuttal

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] Employer separated this issue into three distinct issues: whether the WCJ erred by finding that Claimant met his burden of proving that he is entitled to specific loss benefits for the loss of his right eye for all practical intents and purposes, as well as permanency of the loss: (1) when the substantial competent evidence established, *inter alia*, that Claimant's eyesight had continued to

testimony of Claimant's expert and denying Employer's request to address the rebuttal testimony, resulting in a violation of Employer's right to due process when new evidence was relied upon in finding a specific loss. After review, this Court affirms.

**Facts**[3]

Employer hired Claimant as a fleet service agent. *See* Stip. ¶ 1. On February 19, 2018, Claimant sustained a work-related detached retina of the right eye due to a jet blast to the right eye. *See* Stip. ¶ 3(a). Claimant underwent surgery on February 23, 2018, to repair the detached retina. *See* Stip. ¶ 3(b). On April 10, 2018, Claimant reported the injury to Employer. *See* Stip. ¶ 1. On May 4, 2018, Claimant underwent a second surgical procedure to address a work-related cataract that developed in the right eye as a result of the detached retina. *See* Stip. ¶ 3(b). On May 9, 2018, Employer issued a Notice of Compensation Denial. *See* Stip. ¶ 1. On June 12, 2018, Claimant returned to unrestricted work, earning his pre-injury average weekly wage of $1,355.56. *See* Stip. ¶ 3(c). Employer suspended Claimant's WC benefits as of June 12, 2018. *See id.* On August 27, 2018, Claimant filed a Claim Petition seeking total disability benefits from February 20, 2018 to June 11, 2018. *See* Stip. ¶ 2.

---

improve, post-surgery with healing; (2) by relying on the equivocal and legally incompetent opinions of Claimant's medical expert; and by failing to reconcile Claimant's expert's inconsistent, conflicting opinions relied upon in awarding specific loss benefits for the permanent loss of Claimant's right eye, when he testified that additional healing could take place with improved eyesight and return to baseline; and (3) by not reconciling or addressing clear contradictions in the record. *See* Employer Br. at 1. Because all three issues are subsumed in the first issue, this Court has combined them.

[3] The facts are as recited in a Stipulation between the parties filed on June 25, 2019, and approved by the WCJ on July 1, 2019. The Stipulation resolved the issue of whether Claimant suffered a work-related injury. The issue before this Court is whether the WCJ erred by determining Claimant suffered a specific loss.

The WCJ held hearings on October 24, 2018, and January 23, April 10, July 30, and August 28, 2019. On January 28, 2020, the WCJ granted Claimant's Claim Petition and directed Employer to pay Claimant specific loss benefits for the loss of vision in Claimant's right eye for all practical intents and purposes for a benefit period of 275 weeks with an additional 10-week healing period. Employer appealed to the Board. On March 5, 2021, the Board affirmed the WCJ's decision. Employer appealed to this Court.[4, 5]

**Discussion**

Initially,

> [t]he standard to be applied in the determination of whether compensation for the specific loss of the use of an eye is due, where the eye has been injured but not entirely destroyed . . . is that of whether the injured eye was lost for all practical intents and purposes, not whether [the] claimant in fact has vision in the injured eye. If so, compensation follows. In facilitation of the application of th[is] [] test, a further standard has been adopted: Compensation may not be had if, using both eyes, the claimant can see better, in general, than by using the uninjured eye alone; or, as otherwise stated, if the use of the injured eye does not contribute materially to the claimant's vision in conjunction with the use of the normal eye.

*Hershey Ests. v. Workmen's Comp. Appeal Bd. (Rhoade)*, 308 A.2d 637, 639 (Pa. Cmwlth. 1973) (citations omitted); *see also Arevalo v. Workers' Comp. Appeal Bd.*

---

[4] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

[5] Claimant did not file a brief with this Court.

3

*(Catalent Pharma Sols.)* (Pa. Cmwlth. Nos. 2041, 2069 C.D. 2013, filed July 9, 2014).[6]

Employer first argues that the WCJ erred by finding that Claimant met his burden of proving that he is entitled to specific loss benefits for the loss of his right eye for all practical intents and purposes, as well as the permanency of the loss, when the substantial competent evidence established, *inter alia*, that Claimant's eyesight had continued to improve post-surgery, with healing. Specifically, Employer contends that the required permanency could not be established because Claimant's treating physician and medical expert, Omesh P. Gupta, M.D. (Dr. Gupta), testified that Claimant's eyesight continued to improve post-surgically, and that his visual acuity had improved to better than his pre-injury baseline.

> The law is well established that
>
> [t]he WCJ is the fact[-]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the fact[-]finder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (quoting *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted)).

---

[6] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

4

In addition,

"[f]or purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the [fact-finder]'s necessary findings, those findings will not be disturbed on appeal."[7] *Verizon [Pa.] Inc. v. Workers' Comp[.] Appeal [Bd.] (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). When "performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder." *WAWA v. Workers' Comp[.] Appeal [Bd.] (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). Further, when determining whether substantial evidence exists to support a finding of fact, this Court must give to the party in whose favor the appealed decision was decided "the benefit of all inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Dep['t] of Pub[.] Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001).

*Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018).

In the instant matter, Dr. Gupta testified during his original deposition:

Q. Now, you suggested in your direct testimony that [Claimant's] injured eye provides very little use as far as his uninjured eye. And why is that?

A. Well, I say that for two reasons. Number one, **the** is [sic] **visual acuity in the right eye is not good**. In addition, **the visual acuity in his left eye is really good**. And **whenever you have a scenario when one eye's visual acuity is very good and the other eye is not so good**[,] **the bad eye doesn't really aid too much in the functioning**, day-the-day [sic] functioning.

Q. When looking at [independent medical evaluation (IME) physician and Employer's medical expert, Edward H. Bedrossian, Jr., M.D.'s (]Dr. Bedrossian[][)] report[,]

[7] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (quoting *B.B. Kim's Mkt., Inc. v. Dep't of Health, Div. of Women, Infants & Child. (WIC)*, 762 A.2d 1134, 1135 (Pa. Cmwlth. 2000)).

his findings as to the corrected vision in the injured [eye,] I think it was 20/200; is that right?

A. On his examination which was – yea. On December 4, 2018[,] his vision acuity was 20/200.

Q. And that was corrected; is that correct?

A. That was uncorrected and then it improved to 20/100 plus with correction. So just one line better.

Q. **So if you have a visual acuity uncorrected of 20/200 or 20/100 plus uncorrected** [sic] **does that contribute materially to [Claimant's] vision in conjunction with the uninjured eye**?

A. **No**.

Q. And is that your opinion within a reasonable degree of medical certainty?

A. Yes.

Q. And **is that a permanent condition**?

A. **Yes**.

Q. **Will his vision in the injured eye improve[ ]over time**?

A. **Slightly**. Perhaps slightly. It could improve. Although the visual acuity can fluctuate quite a bit[,] the right eye visual acuity on this examination on this date with Dr. Bedrossian was 20/200 that corrected to 20/100.

On my exam[,] the last one that is included in this set here[,] was 20/70 although I saw him most recently and the visual acuity was 20/400. So **it does vary quite a bit**. But I think **he will suffer permanent vision loss in his right eye**. And **regardless of where the vision ends** of [sic] [,] **it's going to aid very little to his overall function in conjunction with his left eye**.

Reproduced Record (R.R.) at 196-98 (emphasis added).[8]

---

[8] Employer's Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered

During his rebuttal deposition, Dr. Gupta explained, concerning Claimant's peripheral vision:

> Q. **Do you agree** or disagree with Dr. Bedrossian when he says [sic] **that vision on the periphery can substantially contribute in an injured eye to the vision in an** [sic] **non-injured eye**?
>
> A. I think – the answer is **no**, **I don't agree**. I think the injured – the amount of contribution that an injured eye of 20/400 contributes to a healthy eye of 20/20 is minimal.
>
> Q. And Dr. Bedrossian stated . . . , describing the binocular effect of visual acuity, that the ability of the brain to adjust a deviation depends on the disparity between what is in the visual acuity in each eye.
>
> A. That is correct.
>
> Q. So **is the fact that there's a great discrepancy between the two important** or not?
>
> A. **It's very important**. In fact, **when there is a larger discrepancy**, and in this case the better eye is 20/20 and the injured eye is 20/400, that's a relatively large discrepancy that the amount of contribution of the affected eye, the injured eye in this case, to **the overall visual acuity and function of that patient is going to be very minimal**. I can tell you that with some other degree of confidence.
>
> The other type of scenario that we often see is that some people with this type of visual acuity discrepancy often find the visual acuity in the right eye not only not useful but they also find it very distracting because it's not useful and also is very distracting, [sic] and some people will patch it. They'll put a patch on their eye or block the vision out completely out of the eye because they prefer their better eye so much more to this injured eye that they

---

separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency of reference, the citations herein are as reflected in the Reproduced Record.

7

don't even think – even the minimal vision acuity that's in there is worth having it out in real life scenarios.

Q. And finally, Doctor, **you had stated in your previous testimony that regardless of where the vision ends up falling, it's going to aid very little in his overall function in conjunction with his left eye**.

. . . .

Q. Has anything that you have seen today changed your opinion in that regard?

A. No. **Based on the last two visits that occurred after our prior meeting**, **it has only solidified that the vision acuity in the right eye is permanently affected**.

Q. And when asked . . . whether the uninjured eye – excuse me, whether the injured eye contributes materially to [Claimant's] vision in conjunction with the uninjured eye you said no, within a reasonable degree of medical certainty. Has anything that has been stated here today changed your opinion in this regard?

A. No.

R.R. at 269-71 (original emphasis omitted; emphasis added).

The WCJ found Dr. Gupta's testimony "credible and persuasive." R.R. at 35 (WCJ Dec. at 11). Giving Claimant "the benefit of all inferences that can logically and reasonably be drawn from the evidence[,]" *Obimak*, 200 A.3d at 126 (quoting *B.J.K.*, 773 A.2d at 1276), substantial evidence supports the conclusion that "the use of the injured [right] eye does not contribute materially to [] [C]laimant's vision in conjunction with the use of the normal eye[,]" *Hershey Ests.*, 308 A.2d at 639, and that it is a permanent condition. Accordingly, the WCJ properly concluded that Claimant met his burden of proving that he is entitled to specific loss benefits for the loss of the right eye for all practical intents and purposes, as well as the permanency of the loss. *Id.*

8

Employer further asserts that the WCJ's reliance on Dr. Gupta's testimony is misplaced because Dr. Gupta's testimony was equivocal and incompetent. This Court disagrees.

> The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations[,] is a question of law subject to our review. *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, . . . 650 A.2d 114, 117 ([Pa. Cmwlth.] 1994)[.] . . .
>
> In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. *Id*. "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll*[.]*)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). "[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.)*, 29 A.3d 50, 58 (Pa. Cmwlth. 2011).

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012).

In this case, Dr. Gupta unequivocally testified regarding the reasons why he believed Claimant's use of his right eye does not contribute materially to Claimant's vision in conjunction with the use of the normal eye, and that it is a permanent condition. On rebuttal, Dr. Gupta further explained why improvement in the right eye will not affect its contribution to the left eye and, therefore, why Claimant's condition remains permanent. Because Dr. Gupta's testimony was unequivocal and competent, the WCJ properly relied on it.

Finally, Employer contends that the WCJ erred by failing to reconcile Dr. Gupta's conflicting opinions. Specifically, Employer emphasizes that the WCJ erred by rejecting Claimant's visual acuity tests taken after his surgical procedures,

and capriciously disregarding Employer's medical expert, Aiysha Ansari, M.D., MSPH's (Dr. Ansari), testimony. This Court disagrees.

The WCJ expressly determined:

11. [] Claimant's testimony is accepted as credible, persuasive and consistent with the credible and persuasive testimony of Dr. Gupta.

12. The testimony and opinions of Dr. Gupta are accepted as credible and persuasive. This [WCJ] found it significant that Dr. Gupta served as [] Claimant's treating physician and surgeon commencing almost immediately following [] Claimant's work-related injury.

R.R. at 35 (WCJ Dec. at 11).

The WCJ expounded:

The opinions and testimony of Drs. Bedrossian and Ansari as to whether [] Claimant suffered a loss of use of his right eye for all practical intents and purposes are rejected as unpersuasive for the following reasons:

1) Dr. Ansari possesse[s] no [b]oard certifications in ophthalmology;

2) [] Claimant credibly testified that Dr. Ansari did not use a paddle during her examination of him on October 30, 2018[,] and she did not ask him to remove the contact lens he wore in his left eye;

3) Dr. Ansari's testing indicated that [] Claimant's injured right eye had a visual acuity of 20/30, which Dr. Gupta credibly testified would be impossible in that [] Claimant's uncorrected vision in the left eye was always 20/70 or worse. That [] Claimant's injured right eye would have better visual acuity than his healthy left eye is thoroughly unworthy of belief;

4) [A]s Dr. Gupta credibly testified, [] Claimant's full vision field test revealed significant deficits in the Claimant's peripheral vision. Dr. Bedrossian's opinion, therefore, that [] Claimant's right peripheral vision

10

contributed to his overall vision is unpersuasive in light of the vision field test results of April 3, 2019;

5) [B]oth physicians agreed that after one year, [] Claimant's right visual acuity would be as good as it was ever going to be. As Dr. Gupta credibly testified, as of July 10, 2019, [] Claimant's visual acuity was actually worse than 20/100;

6) No compelling evidence was submitted to substantiate the allegation that [] Claimant consciously manipulated his visual acuity test results. As Dr. Gupta credibly testified, visual acuity test results can vary from provider to provider, season to season and as a result of a dry eye condition;

7) The historical snapshots of [] Claimant's right visual acuity test results were not sufficient to overcome the more recent and compellingly consistent right visual acuity test results of July and March 2019. Those tests indicated that [] Claimant's right visual acuity had stabilized at 20/400;

8) The stabilization of [] Claimant's right visual acuity in March and July 2019 supported the opinion of Dr. Gupta that after one year post injury, [] Claimant's right eye was going to heal as much as it was going to heal; [and]

9) [T]he testimony and opinions of Dr. Gupta as [] Claimant's treating physician and surgeon are more credible, persuasive and consistent with the severity of the Claimant's work[-]related macular off [sic] retinal detachment and subsequent surgical repairs.

R.R. at 36 (WCJ Dec. at 12).

"Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations." *W. Penn Allegheny Health Sys.*, 251 A.3d at 475. Because "substantial evidence supports the [WCJ]'s necessary findings, [the WCJ's] findings will not be disturbed on appeal." *Obimak*, 200 A.3d at 126 (quoting *Verizon Pa. Inc.*, 116 A.3d at 1162). Accordingly, the WCJ properly rejected Claimant's visual acuity tests taken after his surgical procedures and did not capriciously disregard Dr. Ansari's testimony.

11

Employer next argues that the WCJ erred by denying Employer's objection to the rebuttal testimony of Claimant's expert and denying Employer's request to address the rebuttal testimony, resulting in a violation of Employer's right to due process when new evidence was relied upon in finding a specific loss. This Court disagrees.

Here, at the January 23, 2019 WCJ hearing, the status of the expert depositions was discussed. The WCJ summarized:

> We had a brief off-the-record discussion. [] Claimant's medical expert[, Dr. Gupta,] is going to testify by deposition.
>
> . . . .
>
> 31st, January 31st.
>
> An IME report was completed. [Claimant's counsel] has reviewed it. A lot of things can be resolved by virtue of the IME doctor's findings. However, [] Employer wanted the opportunity to refine certain things, specifically, wanted the IME doctor[, Dr. Bedrossian,] to address whether [] Claimant suffered a specific loss of the eye for all intents and purposes.
>
> Otherwise, it's a closed period of disability because [] Claimant has returned to work without a loss of earnings with [] Employer.
>
> I asked [Employer's counsel] to expedite receipt of the supplemental report so it's in hand by the time of the deposition on January 31st.
>
> I know that's ambitious under the circumstances but doable, especially since the IME was in December. He doesn't have to reinvent the wheel. So proceed with the deposition.
>
> [Claimant's counsel], **if you don't get the supplemental report by the time of your deposition**, **you're going to pay for another deposition of the medical expert to the extent that he has to augment the original testimony after receipt of the supplemental report**.

12

R.R. at 136-37 (emphasis added).

> At the April 10, 2019 hearing, the WCJ described:
>
> [WCJ]: We had a lengthy off-the-record discussion. The Physical Exam Petition pertains to a test that was ordered by the IME physician, Dr. Bedrossian, . . . as part of the IME. **[Claimant's counsel] was gracious enough to agree to have [] [C]laimant undergo that test** and it has been completed and forwarded to the doctor for his evaluation. [Claimant's counsel] has secured his medical expert by deposition already. **Now your expert did or did not have the test result at that point**?
>
> [Claimant's counsel]: **[He] did not**.
>
> [WCJ]: Well, **if you want a supplemental report from your expert based upon the new test that you received, I'm happy to entertain that since he's already testified**.
>
> [Claimant's counsel]: At a prior hearing, we addressed this issue that they had not gotten a supplemental report from Dr. Bedrossian regarding the issue that we're involved with here. That is whether there's a specific loss of the eye.
>
> [WCJ]: Oh.
>
> [Claimant's counsel]: And you had ordered that if we needed to take the doctor's testimony in response, that [Employer] would pay for it.
>
> [WCJ]: Okay. All right.
>
> [Claimant's counsel]: So that issue is covered. **I believe we will have to take his testimony again**. So if there is an issue, we can do this by telephone conference.
>
> [WCJ]: Yes, please. So the deadline for your expert is May 30[th]. Once you have that deposition, if it comes to pass that Dr. Bedrossian agrees that the test indicates something that's supported [sic] [] [C]laimant's case, you'll not need another deposition; is that right?
>
> [Claimant's counsel]: There are more complicating factors.

13

[WCJ]: Okay.

[Claimant's counsel]: **They've scheduled another doctor's deposition**.

[WCJ]: Who did?

[Claimant's counsel]: The defense as a fact witness

so –

[WCJ]: Who is that?

[Employer's counsel]: It's Dr. Ansari who examined [] [C]laimant back in October. She performed visual acuity testing in both eyes.

[WCJ]: IME doctor or treating?

[Claimant's counsel]: Neither.

[Employer's counsel]: Neither.

[Claimant's counsel]: It's a premises doctor. It's someone that they have on the premise [sic] at the airport. An issue arose during his employment, he went up to see them, boom.

[WCJ]: I see. She's an agent?

[Employer's counsel]: That's our position, Your Honor.

[WCJ]: She's an agent of [] [E]mployer, [Dr.] Ansari?

[Employer's counsel]: [Dr.] Ansari.

[Claimant's counsel]: Yes.

[WCJ]: And she's going to testify

[Employer's counsel]: April 29th.

[WCJ]: About the --

[Employer's counsel]: The acuity testing she performed in both eyes on October 30th.

. . . .

14

> [WCJ]:  Is that not in the paperwork?  The notes of Dr. Ansari?
>
> [Employer's counsel]:  I don't believe it specifies in her testimony.  **We would need to address the specificity of the testing and her interpretation**.
>
> [WCJ]:  I don't want this gone [sic] off the reservation into an entire full-blown deposition.  I mean, if you want to establish the factual foundation for Dr. Ansari's conclusions, I'm happy to do that, but there's no need to have a fourth or fifth deposition.  **So**[,] **confine it if you would**, **direct and cross**, [**Claimant's counsel**], **to the matter at hand**.
>
> [Claimant's counsel]:  Absolutely.

R.R. at 145-49 (emphasis added).

Dr. Bedrossian was deposed on April 19, 2019.  Dr. Gupta's rebuttal testimony was subsequently taken at Claimant's expense.  At the July 30, 2019 hearing, the WCJ explained:

> [WCJ]:  Regarding the timing of the second deposition of [Dr.] Gupta.  I was initially inclined to have [Claimant's counsel] proceed with [] [E]mployer paying for the deposition, but then I think a part of it was I wanted it to be a half an hour deposition and Dr. Gupta charge you accordingly.  He wasn't about to do that, which I wasn't happy with.  So at that point I kind of hesitated on it.  Didn't you offer to pay for it and just get it back in your costs?
>
> [Claimant's counsel]:  Yes.  Since he wouldn't agree to reduce his fee for [Employer] I said I'll pay for it and I did, and we took his rebuttal testimony.
>
> [WCJ]:  [**Claimant's counsel**] **indicated he asked the questions of Dr. Gupta that were confined to what he could not have presented before**.  **However**, [**Employer's counsel**] **purportedly**, and I'll find out for myself soon enough, **used it as an opportunity to either emphasize or repeat his other questioning from the first deposition**, which I am not really thrilled with, because that wasn't the parameter that I established to

15

proceed with the second deposition. Anyway, what's done is done.

Off the record [**Employer's**] **counsel advised that he might be interested in presenting surrebuttal testimony based on Dr. Gupta**'s **second** [**deposition**] – **it's not going to happen unless something came out that could not have been foreseen before Dr. Gupta's second deposition**. So I am going to deny that request for surrebuttal regardless of what the review of the transcripts indicate.

. . . .

[WCJ]: . . . .

There is a final listing [sic] August [28, 2019], I think. **If you have something to say on the record then**, **after your review of the transcripts**, **you can certainly make a statement at the hearing in August**.

R.R. at 158-60 (emphasis added). However, Employer's counsel made no such statement at the August 28, 2019 hearing. *See* R.R. at 175-78.

"It is well[-]established law that '[t]he admission of evidence is a matter within the sound discretion of the WCJ.' *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1230 n. 12 (Pa. Cmwlth. 2011)." *Swigart v. Workers' Comp. Appeal Bd. (City of Williamsport)*, 131 A.3d 117, 121 (Pa. Cmwlth. 2015). Here, given the numerous opportunities Employer was given to have Claimant examined and have Employer's doctors deposed, "[and i]n light of the fact that the WCJ has authority over what evidence is admitted, and in light of her charge to resolve claims in an efficient manner, [this Court] see[s] no abuse of discretion in the WCJ's determination to prohibit [] [E]mployer from taking the [surrebuttal] deposition[,]" and to permit Claimant's doctor's rebuttal testimony. *Id.*

16

**Conclusion**

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Airlines, Inc. and      :
New Hampshire Insurance Co.,    :
          Petitioners       :
                              :
          v.               :
                              :
Chris Brown (Workers'         :
Compensation Appeal Board),   :   No. 356 C.D. 2021
          Respondent     :

## O R D E R

AND NOW, this 9th day of February, 2022, the Workers' Compensation Appeal Board's March 5, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge