F.V.C., Petitioner

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 30, 2009.

Decided Jan. 12, 2010.

F.V.C., petitioner, pro se.

Howard Ulan, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Representing herself, F.V.C. (Mother), the mother of O.D., (Child), petitions for review of an order of the Department of Public Welfare (Department) granting the request of D.D., Sr., (Grandfather) to expunge his name from the ChildLine Registry.[1] On appeal, we consider whether Mother has standing to challenge the Department's order granting expungement and, if so, whether the record supports the Department's order. We conclude Mother has standing to appeal, but we affirm the Department's expungement order.

Child was born April 9, 2002 to Mother and D.D., Jr. (Father). Prior to their divorce, Mother and Father lived in various places including Grandfather's home in Washington County, Pennsylvania. Moth-

---

1. ChildLine operates a statewide system for receiving reports of suspected child abuse, referring reports for investigation and for maintaining reports. 23 Pa.C.S. § 6332. A report of the suspected child abuse may be either "indicated," "founded," or "unfounded." 23 Pa.C.S. §§ 6337; 6338. In the case of "indicated" or "founded," reports, the information is placed in the statewide central register. 23 Pa.C.S. § 6338(a). Notice of the determination must be given to the perpetrators of the child abuse indicating their ability to obtain employment in child-care facilities may be adversely affected. *Id.*

er, Father, and Child lived with Grandfather on two separate occasions: the first time was when Child was one year old and the second time was for a period of one to two months beginning late July or early August, 2005. Child's grandmother and paternal aunt also lived at Grandfather's residence. Grandfather also spent time with Mother, Father, and Child when they did not live with him.

During a visit to Mother's parents' home in West Virginia in September, 2005, the three-year old Child allegedly reported to Mother that Grandfather bit, tickled and kissed her in the vaginal area. Mother contacted the West Virginia Department of Health and Human Resources. West Virginia authorities interviewed Child and, based on the interview, contacted the Washington County Department of Children and Youth Service (CYS). In turn, CYS issued an indicated report of child abuse naming Grandfather as perpetrator.

Grandfather requested the Department expunge the indicated report; however, the Department's Office of Children, Youth and Families denied his request. Accordingly, Grandfather appealed to the Department's Bureau of Hearings and Appeals (BHA). A hearing examiner conducted several days of hearings during which Child, Mother, Grandfather, Father, paternal grandmother, paternal aunt, Child's counselor, and officials from West Virginia and CYS testified.

The hearing examiner recommended sustaining Grandfather's appeal. In particular, the hearing examiner determined the record supported Grandfather's position Mother was hyper-vigilant as to Child's diapering. The hearing examiner also found Mother's testimony not credible where she testified that she saw Grandfather digitally penetrate Child while applying ointment when Child was two months old. After this alleged incident, Mother nevertheless left Child in Grandfather's care. The hearing examiner also found it incredible that Mother did not take Child to the doctor when, at the age of 2, she allegedly started wetting herself and complained of vaginal pain and itching.

The hearing examiner further found it notable that Child could not answer most of the questions asked of her. In addition, Child testified she was three years old when the abuse occurred but later stated Mother told her that she was three when Grandfather touched her. Child also testified Mother was mad at Grandfather. These statements led the hearing examiner to conclude Mother spoke to Child and tainted her statements to authorities. Thus, the hearing examiner found Child's testimony credible in part but of little weight.

The hearing examiner recommended Grandfather's appeal be sustained and his name expunged from the ChildLine Registry. The BHA adopted the hearing examiner's recommendation in its entirety. Mother now petitions for review.[2]

■ Initially, the Department challenges Mother's standing to appeal the order expunging Grandfather's name from the ChildLine Registry. It contends Mother is not aggrieved by the Department's order inasmuch as her interest in the expungement order is not direct. Mother did not reply to the Department's assertion.

Our courts have not decided whether the parent of an allegedly abused child has standing to appeal the grant of an ex-

---

**2.** Our review is limited to determining whether the record supports the necessary findings of fact, whether the constitutional rights were violated, or whether errors of law were made. *C.F. v. Dep't of Pub. Welfare*, 804 A.2d 755 (Pa.Cmwlth.2002).

pungement request of an *indicated* report of abuse. Generally, any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in the adjudication may appeal to a court vested with jurisdiction of such appeals. 2 Pa. C.S. § 702.[3] Thus, Mother's standing to appeal is dependent on her status as a person with a direct interest in the expungement order.

Initially, the purpose of the Child Protective Services Law (Law)[4] is to "encourage more complete reporting of suspected child abuse", "establish protective services for the purpose of investigating the reports swiftly and competently," and protect children from further abuse. 23 Pa. C.S. § 6302(b). Thus, the Law places a duty on local child protective services agencies to investigate reports of suspected child abuse and issue an appropriate report based upon the investigation. 23 Pa.C.S. §§ 6334–37. When a report of child abuse is determined to be indicated,[5] as here, the Law requires the local agency to enter the information in the statewide central registry. 23 Pa.C.S. § 6338.

The Law further sets forth the procedure by which any person named as perpetrator in an indicated report of child abuse may request the Department to expunge the report on the grounds it is inaccurate or maintained in a manner inconsistent with the Law. In relevant part and with emphasis added, Section 6341 of the Law provides:

**(a) General rule.**—At any time:

(1) The secretary may amend or expunge any record under this chapter upon good cause shown and notice to the appropriate subjects of the report.

(2) Any person named as perpetrator . . . in an indicated report of child abuse may, within 45 days of being notified of the status of the report, request the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter.

**(b) Review of grant of request.**—If the secretary grants the request under subsection (a)(2), the Statewide central register, appropriate county agency, appropriate law enforcement officials and *all subjects*[6] shall be so advised of the decision. The county agency and any subject have 45 days in which to file an administrative appeal with the secretary. If an administrative appeal is received, the secretary or his designated agent shall schedule a hearing pursuant to Article IV of the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code, and attending departmental regulations. If no administrative appeal is

---

**3.** Section 3490.106a(e) of the Department's regulations provides that hearings shall be conducted pursuant to the Administrative Agency Law. 55 Pa.Code § 3490.106a.

**4.** 23 Pa.C.S. §§ 6301–85.

**5.** An indicated report of child abuse is issued after:

> an investigation by the county agency or the [Department] determines that substantial evidence of the alleged abuse exists based on any of the following:
> (1) Available medical evidence.
> (2) The child protective service investigation.

(3) An admission of the facts of abuse by the perpetrator.

23 Pa.C.S. § 6303.

**6.** Currently, the Law defines "subject of the report" as

> [a]ny child, *parent*, guardian *or other person responsible for the welfare of a child* **or** *any alleged or actual perpetrator* or school employee named in a report made to the [Department] or a county agency under this chapter.

23 Pa.C.S. § 6303 (emphasis added); *see also* 55 Pa.Code § 3490.4 (Definitions).

received within the designated time period, the Statewide central register shall comply with the decision of the secretary and advise the county agency to amend or expunge the information in their records so that the records are consistent at both the State and local levels.

**(c) Review of refusal of request.**—If the secretary refuses the request under subsection (a)(2) or does not act within a reasonable time, but in no event later than 30 days after receipt of the request, the perpetrator ... shall have the right to a hearing before the secretary or a designated agent of the secretary to determine whether the summary of the indicated report in the Statewide central register should be amended or expunged on the grounds that it is inaccurate or that it is being maintained in a manner inconsistent with this chapter. The perpetrator ... shall have 45 days from the date of the letter giving notice of the decision to deny the request in which to request a hearing. The appropriate county agency and appropriate law enforcement officials shall be given notice of the hearing. The burden of proof in the hearing shall be on the appropriate county agency. The department shall assist the county agency as necessary.

Section 6341(b) of the Law clearly permits *any subject* to file an administrative appeal of the secretary's grant of a request for expungement and request an evidentiary hearing. 23 Pa.C.S. § 6341(b). A "subject" includes a parent or other person responsible for welfare of a child. 23 Pa. C.S. § 6303.

In this case, the Department's Office of Children and Youth Services initially denied Grandfather's expungement request. Grandfather appealed pursuant to 23 Pa. C.S. § 6341(c), and Mother participated in the administrative hearings.

The Department's regulations echo the statutory procedures outlined above for hearings and appeal proceedings for indicated reports of abuse. Similar to the Law, Section 3490.106a(b) authorizes "other subjects of the [child abuse report] and the county agency [to] appeal the Secretary's decision to grant the request to expunge the report...." 55 Pa.Code § 3490.106a(b). The regulations also address further review. With emphasis added, Section 3490.106a(h) provides:

> *Parties to a hearing held under this section* have 15–calendar days from the mailing date of the final order of the Bureau of Hearings and Appeals to request the Secretary to reconsider or *30–calendar days to appeal the final order to the Commonwealth Court.*

55 Pa.Code § 3490.106a(h).

Neither the Law nor the Department's regulations define the term "party." However, Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, identifies a "party" as

> [a]ny person who appears in a proceeding before an agency who has a direct interest in the subject matter of such proceeding.

Applying the definition of "party" found in the Administrative Agency Law here, Mother appeared before the Department and clearly has a direct interest in the accurate reporting of child abuse perpetrated against her daughter. We therefore conclude Mother has standing to appeal.[7] *Cf. Lower Allen Citizens Action*

---

**7.** Our research uncovered two cases addressing a parent's standing to challenge an order expunging the name of an alleged perpetrator from the ChildLine Registry. The cases, however, are distinguished on factual and legal grounds.

*L.A.M. v. Department of Public Welfare,* 114 Pa.Cmwlth. 499, 539 A.2d 45 (1988), is distin-

*Group, Inc. v. Dep't of Envtl. Resources,* 119 Pa.Cmwlth. 236, 546 A.2d 1330 (1988) (regulations authorizing any "person" to appear and participate in matters before Environmental Hearing Board conferred standing on citizens group to challenge application for mine drainage permit); *see also* 20 *West's Pennsylvania Appellate Practice* § 501:14 (2008–09) ("if an appeal from an administrative agency is initially taken to the Commonwealth Court, under [42 Pa.C.S. § 763], expanded concepts of standing (that is, "person" plus aggrievement to a "direct" interest) apply pursuant to Section 702 of the Administrative Agency Law, [2 Pa.C.S. § 702])."

We next address Mother's claims the DPW failed to give proper weight to witness testimony supporting the finding

Grandfather sexually abused Child. We disagree.

■ The county agency bears the burden of proof in an action for expunction of an indicated report of child abuse, and in order to discharge this burden, it must present substantial evidence that the report is accurate. *L.S. v. Dep't of Pub. Welfare,* 828 A.2d 480 (Pa.Cmwlth.2003). Substantial evidence is such evidence that outweighs any conflicting evidence that alleged perpetrator's conduct constituted child abuse. *Id.* The BHA is the ultimate fact-finder in expunction appeals. *K.J. v. Dep't of Pub. Welfare,* 767 A.2d 609 (Pa. Cmwlth.2001). Determinations as to credibility and evidentiary weight will not be disturbed on appeal absent an abuse of discretion. *D.T. v. Dep't of Pub. Welfare,* 873 A.2d 850 (Pa.Cmwlth.2005).

guished on factual grounds. In *L.A.M.*, the Department denied the alleged perpetrator's initial expungement request. While the alleged perpetrator's administrative appeal was pending, a jury acquitted him of criminal child abuse charges. Based on the verdict, the local county agency changed the report of abuse from indicated to unfounded. Pursuant to then Section 14(h) of the Law, the Department expunged the report of abuse. *See* Section 11 of the Act of November 26, 1975, *as amended, formerly* 11 P.S. §§ 2214(h). The 1975 version of the Law was repealed by the Act of December 19, 1990, P.L. 1240. A similar provision is now found in 23 Pa.C.S. § 6341(f).

On appeal, this Court considered whether the mother of the child had standing to appeal the local agency's decision to change the status of the report. Concluding the mother lacked standing, we noted that the local agency was required by the Law to expunge an unfounded report of abuse and there was no indication the Legislature provided a means by which to challenge the agency's decision to do so. Notably, we further observed that a child's guardian could appeal an order of expungement of any *indicated* or founded report of abuse. *See* Section 15(d) of the Law, *formerly* 11 P.S. § 2215(d), which is similar to 23 Pa.C.S. § 6341(b) and (c). *L.A.M.* does not compel the same result here inasmuch as the

current report of abuse remains indicated and the report was not subsequently determined to be unfounded.

*R.W. v. Department of Public Welfare,* 123 Pa.Cmwlth. 286, 553 A.2d 513 (1989), is distinguished on legal grounds, because the statutory language was different. In *R.W.*, we rejected a mother's claim she had standing to challenge an order denying her husband's expungement request. At the time of the mother's appeal, the Law defined "subject of the report" as "any child reported to the central register of child abuse and his parent, guardian *or other person responsible named in the report.*" Section 3 of the Law, *formerly* 11 P.S. § 2203 (emphasis added). As the parent of the abused child, the mother maintained she was the "subject of the report." We rejected the mother's position because it would require the Court to disregard the last part of the definition, that is "or other person responsible named in the report."

Since our decision in *R.W.*, the General Assembly redefined the term "subject of the report" as noted above, and added the term "perpetrator." *See* Act of December 16, 1994, P.L. 1292. A "perpetrator" is a "person who has committed child abuse and is the parent of a child, a person responsible for the welfare of a child, an individual residing in the same home as a child or a paramour of a child's parent." 23 Pa.C.S. § 6303.

■ Here, Mother challenges the BHA's credibility determinations and weight given the evidence, citing instances where the BHA allegedly mischaracterized the testimony to support its expungement order. On review, however, we conclude the record supports the BHA's findings and credibility determinations. *D.T.*[8]

Accordingly, we affirm.

**ORDER**

**AND NOW,** this 12th day of January, 2010, the order of the Department of Public Welfare is **AFFIRMED.**

■

---

[8]. Mother complains the BHA erred in placing little weight on Child's testimony where she gave consistent statements regarding the alleged abuse. As noted above, the BHA, as fact finder, assesses credibility and evidentiary weight. *K.J.* The BHA afforded Child's testimony little weight because of Mother's influence. This is not an abuse of discretion.

In addition, Mother asserts she never testified Grandfather penetrated Child's vagina; rather, her concern was the manner in which Grandfather applied diaper ointment. *See* Mother's Br. at 22–23. However, Mother testified that she observed Grandfather putting ointment in Child's vagina with his finger. Notes of Testimony (N.T.) at 4/1/08, at 22.

Mother also complains Father's testimony was inconsistent where he testified Child did not have bad dreams and then testified he comforted Child when she had nightmares. Mother mischaracterizes Father's testimony. Father denied Child experienced nightmares while living at Grandfather's residence. N.T., 4/7/08, at 6. On cross-examination, Father disputed CYS's implication he *never* comforted Child. *Id.* at 24.