# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.B.,                                    :
                    Petitioner           :  **CASE SEALED**
                                         :
          v.                             :  No. 2316 C.D. 2015
                                         :  Submitted: April 8, 2016
Department of Human Services,            :
                    Respondent           :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED:  June 6, 2016**


          The Department of Human Services, Bureau of Hearings and Appeals
(Bureau) issued an October 22, 2015 final order adopting the Recommendation of
the Administrative Law Judge (ALJ) denying J.B.'s (Petitioner) appeal to expunge
an indicated report of child abuse maintained on the Child Line Registry pursuant
to the Child Protective Services Law (CPS Law).[1]  Before this Court, Petitioner
argues (i) that the Bureau erred in adopting the ALJ's decision because the ALJ's
credibility determinations were not based on first-hand observations of the
witnesses' testimony and (ii) that the indicated report is being improperly

---

[1] 23 Pa. C.S. §§ 6301-6384.  The Child Line Registry is a statewide system for receiving reports
of suspected child abuse, referring reports for investigation, and maintaining those reports.  23
Pa. C.S. § 6332.  A report of suspected child abuse may be either "indicated," "founded," or
"unfounded."  23 Pa. C.S. §§ 6337, 6338.  In the case of "indicated" or "founded" reports, the
information is placed in the statewide central registry.  23 Pa. C.S. § 6338(a).

maintained on the Child Line Registry because it is not supported by substantial evidence.[2] We affirm.

Initially, we address Petitioner's argument that the Bureau erred in relying on the credibility determinations made by an ALJ who did not preside over the hearings in this matter. Pursuant to the CPS Law, the Bureau, as the Secretary's designee, is the ultimate finder of fact in expunction appeals. 23 Pa. C.S. § 6341; *G.V. v. Department of Public Welfare*, 91 A.3d 667, 678 (Pa. 2014). In *R. v. Department of Public Welfare*, 636 A.2d 142 (Pa. 1994), our Supreme Court specifically rejected an argument identical to the one put forth by Petitioner in the instant matter:

> The Office of Hearings and Appeals functions as the finder of fact in expungement hearings. It was designated as such by the Secretary of the Department of [Human Services], who is authorized to appoint a designee to perform her statutorily assigned duties to find facts and decide whether to expunge an indicated report. Because the Office of Hearings and Appeals, not the [ALJ], is the ultimate finder of fact in this case, it is of no moment that the [ALJ] who issued the Adjudication and Recommendation did not hear the testimony given during the first four days of hearings.

*Id*. at 145 (internal citation omitted); *see also F.V.C. v. Department of Public Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010) (accord). The Court held in *R. v. Department of Public Welfare*, that the critical issue is whether due process rights are sufficiently protected by a decision that (1) is supported by substantial evidence

---

[2] Our scope of review is limited to a determination of whether substantial evidence exists to support the necessary findings of fact, whether there has been an error of law, and whether constitutional rights have been violated. *Bedford County Children and Youth Services v. Department of Public Welfare*, 613 A.2d 48, 50 (Pa. Cmwlth. 1992).

and (2) clear enough to permit meaningful appellate review. *Id*. at 145; *see also Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1389 (Pa. 1985). In advancing her argument, Petitioner also contends that, like a workers' compensation judge reviewing a deposition, where an ALJ does not have the ability to assess witness demeanor, the ALJ must articulate an objective basis for accepting a witness' testimony as credible or rejecting a witness' testimony as not credible. While this requirement is surely necessary for a decision to be clear enough to permit meaningful appellate review, *see In re S.H.*, 96 A.3d 448, 460 (Pa. Cmwlth. 2014), it provides no grounds for relief here; the credibility determinations made by the ALJ in the Adjudication and Recommendation adopted by the Bureau are not conclusory or based on witness demeanor, but rooted in a detailed discussion of the substantive testimony given by Child and J.B., and the supporting evidence. Accordingly, Petitioner's argument that the Bureau erred as a matter of law in adopting the Adjudication and Recommendation of an ALJ who did not hear and observe the witnesses' testimony first-hand is without merit.

Next, Petitioner argues that the record does not contain the evidence necessary to maintain an indicated report of child abuse. In the context of expunction hearings, substantial evidence or the standard of proof is "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa. C.S. § 6303; *G.V.*, 91 A.3d at 674. A report of child abuse is defined as an "indicated" report if an investigation by the Department of Human Services (DHS) or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) available medical evidence; (ii) the child protective service

3

investigation; or (iii) an admission of the acts of abuse by the perpetrator. 23 Pa. C.S. § 6303(a). In relevant part, Child Abuse is defined as "any recent act or failure to act which causes nonaccidental serious physical injury to a child under 18 years of age." *Former* 23 Pa. C.S. § 6303(b)(1)(i).[3] A parent who has committed Child Abuse against his or her child is a "Perpetrator" under the CPS Law. 23 Pa. C.S. § 6303(a).

On November 5, 2014, Washington County Children and Youth Services (CYS) filed an indicated report identifying Petitioner as the Perpetrator of Child Abuse. (Certified Record (C.R.), CYS Report.) On November 19, 2014, Petitioner received notice that the indicated report was being maintained on the Child Line Registry and of her right to seek review from DHS of the decision to maintain the report. (C.R., Notification Letter.) Petitioner filed her request for review on December 3, 2014 and DHS informed Petitioner on March 9, 2015 that it was denying her request to expunge the report. (C.R., Request for Review; C.R., Denial Letter.) On April 14, 2015, Petitioner requested a hearing, and hearings were held on August 24 and September 23, 2015. (C.R., Hearing Request; C.R. August Hearing Transcript (August H.T.); C.R., September Hearing Transcript (September H.T.).)

During the August 24, 2015 hearing, CYS presented the testimony of the Child who is the subject of the indicated report, and the testimony of Richelle Carone Sommerfield, M.D., a pediatrician with Washington Pediatric and Adolescent Medicine. (C.R., August H.T. at 12, 55.) On September 23, 2015, CYS presented the testimony of Carrie LeVecchia, CYS's Intake Case Worker

---

[3] Subsequent to this matter, the definition of Child Abuse in 23 Pa. C.S. § 6303(b) was deleted and replaced by the definition now found in 23 Pa. C.S. § 6303(b.1) pursuant to the Act of December 18, 2013, P.L. 1170, effective December 31, 2014.

Supervisor; Petitioner also testified, as did her husband and Child's adoptive father, M.B., and Petitioner presented testimony from Marisa L. Quattrone, M.D., a pediatrician with Washington Pediatric and Adolescent Medicine. (C.R., September H.T. at 110, 121, 147, 154.) On October 20, 2015, the ALJ issued an Adjudication and Recommendation containing findings of fact, a discussion of the evidence and conclusions of law that recommended that Petitioner's appeal be denied. On October 22, 2015, the Bureau adopted the ALJ's Adjudication and Recommendation in its entirety, denying Petitioner's request to expunge the indicated report.

The ALJ's Adjudication and Recommendation adopted by the Bureau contained the following findings of fact with citations to the record:

> 1. [Child] is a female child born on August 2, 2000. (Exhibit C-3)
>
> 2. [Petitioner] is the adoptive mother of [Child]. (Exhibit C-3)
>
> 3. M.B. is the adoptive father of [Child] and [Petitioner's] husband. (Exhibit C-3)
>
> 4. Between December 1, 2012, and December 31, 2012, [Petitioner] hit [Child] on her back with an extension cord. (N.T. 62-71, 134-145)
>
> 5. As a result of [Petitioner] hitting [Child] with an extension cord, [Child] sustained cuts and scars on her back. (Exhibit C-2; N.T. 71-72)
>
> 6. As a result of [Petitioner] striking her, the [Child] suffered a pain level of "ten" on a scale of one to ten. (N.T. 69)

7. Dr. Quattrone is a physician with Washington Health System and was [Child's] doctor. (N.T. 111-112)

8. On August 15, 2013, and August 18, 2014, [Child] went for "well child visits" with Dr. Quattrone. (N.T. 111)

9. Dr. Quattrone did not observe any marks, injuries, or scars on [Child's] back during her examinations. (N.T. 113)

10. Dr. Quattrone does not require children to remove their clothes during examinations and cannot remember whether [Child] was examined in a paper gown or her street clothes. (N.T. 117-118)

11. On September 1, 2014, [CYS] received a report of child abuse, alleging [Petitioner] physically abused [Child]. (Exhibit C-3)

12. Jolene Diethorn was a Caseworker with [CYS] and investigated this report of alleged child abuse. (Exhibit C-3; N.T. 127-128)

13. Carrie Lavecchia is a Caseworker Supervisor with [CYS] and supervised Ms. Diethorn's investigation of this report of alleged child abuse. (Exhibit C-3; N.T. 124)

14. Ms. Lavecchia interviewed both the [Child] and [Petitioner]. (N.T. 134-137)

15. Ms. Diethorn took pictures of [Child's] scars. (Exhibits C -2, C -3; N.T. 127-128)

16. The photographs depict multiple scars on [Child's] back. (Exhibit C -2)

17. During her interview with Ms. Lavecchia, [Child] disclosed that [Petitioner] hit [Child's] back with an

extension cord on three different occasions, including one between December 1, 2012, and December 31, 2012. (N.T. 134-135)

18. [Child] disclosed that on the incident between December 1, 2012, and December 31, 2012, [Child] had to lift up her shirt and pull down her pants so she would not ruin new clothes [Petitioner] had purchased for her. (N.T. 134-135)

19. Dr. Sommerfield is a board-certified pediatrician who testified in this matter. (N.T. 12-13)

20. On October 7, 2014, Dr. Sommerfield examined [Child]. (Exhibit C-1; N.T. 13)

21. Dr. Sommerfield observed well-healed scars on the lumbar portion of [Child's] back. (Exhibits C-1; N.T. 19-21)

22. The scars ranged in size from one inch to two and a half inches. (Exhibits C-1, C-2)

23. Dr. Sommerfield opined that the injuries would have caused severe pain at the time they were inflicted. (Exhibit C-1; N.T. 21-22)

24. Dr. Sommerfield opined that the injuries were consistent with [Child's] disclosure that they were caused about two years ago by an extension cord. (Exhibit C-1; N.T. 21)

25. Dr. Sommerfield opined that it was "very doubtful" that [Child's] injuries were less than one year old. (N.T. 38)

26. Dr. Sommerfield opined that, other than being struck by an extension cord, there are not many other reasonable explanations for the injuries to [Child's] back. (N.T. 49-50)

7

27.    [CYS] completed a Child Protective Services Investigative Report (C -48) that reads in pertinent part: "Mandated source reported that [Petitioner] hit this fourteen year old female on the back with an extension cord causing scars to the [Child's] back.  Child was examined medically and presented with three well-healed scars, one to two and a half inches in length, over the lumbar portion of the [Child's] back." (Exhibit C-3)

28.  The CY-48 also reads: "CPS interviewed [Child] and [Petitioner].  [Child] corroborated the allegations.  [M.B.] refused to cooperate with CPS.  [Petitioner] denied ever hitting [Child] and denied having knowledge of any scarring to [Child's] back.  CPS saw injury and photographs were taken.  Physician stated that the injuries are indicative of maltreatment and would have caused severe pain and likely impaired [Child's] functioning including difficulty bending, sitting or laying down.  CPS investigation determined that there is substantial evidence that serious physical injury occurred."  (Exhibit C-3)

29.  [CYS] completed its investigation and on November 5, 2014, filed an indicated report of child abuse naming [Petitioner] as the perpetrator. (Exhibit C-3)

30.  On April 20, 2015, [DHS] received [Petitioner's] appeal requesting expunction of the indicated report. (File)

31.  [Child's] scars on her back were visible as of the date of the hearing.  (N.T. 71-72)

32.    [DHS's] exhibits were admitted into evidence without objection.

33.  [Child], age 15, testified credibly at the hearing.

34.  Dr. Sommerfield testified credibly.

8

35. Dr. Quattrone testified credibly.

36. Ms. Lavecchia testified credibly.

37. [Petitioner] did not testify credibly.

(ALJ's Adjudication and Recommendation, Findings of Fact (F.F.) ¶¶1-37.) In addition to the specific findings, the Adjudication and Recommendation adopted by the Bureau contained a discussion of the credibility determinations made in findings of fact 33 and 37. Child's testimony was found credible because her testimony detailed the manner of abuse and was corroborated by the photographic evidence submitted into the record, as well as the CYS investigation and the testimony of Dr. Sommerfield.[4] Petitioner's testimony was found incredible because it conflicted with the other testimony in the record, the photographic and documentary evidence, and failed to provide any explanation for how Child sustained significant scarring to Child's back while in Petitioner's care.[5]

Petitioner does not challenge any specific factual findings. However, it is clear from the record that findings of fact 14 and 17 are not supported by substantial evidence. Both findings refer to Ms. Lavecchia's interview with Child. Although Ms. Lavecchia interviewed Petitioner, Ms. Lavecchia did not interview

---

[4] In the Adjudication and Recommendation adopted by the Bureau, the ALJ stated: "[Child] credibly testified that [Petitioner] intentionally struck [Child] with an extension cord. [Child] testified how [Petitioner] got an extension cord, folded it in half, held the hard part in her hand, and struck [Child] multiple times. [Child] screamed, cried and was bleeding. The scars depicted in the photographs clearly show hard, deliberate, and repeated strikes to [Child's] back." (ALJ's Adjudication and Recommendation, Discussion at 12.)

[5] In the Adjudication and Recommendation adopted by the Bureau, the ALJ stated: "[Petitioner's] denial is not credible. [Petitioner] denied she ever struck [Child] with an extension cord, but D. Sommerfield opined that [Child's] injuries were consistent with being struck by an extension cod, were 'classic red flags of abuse,' and were not likely caused by other reasonable explanations." (ALJ's Adjudication and Recommendation, Discussion at 12.)

Child herself and instead testified concerning the investigation and interview conducted by her subordinate, Ms. Diethorn. (C.R., September H.T. at 140-141.) Child also testified about her interview with Ms. Diethorn. Regardless, the ALJ's errors in findings of fact 14 and 17 have no bearing on the outcome of the instant matter because the record contains overwhelming evidence supporting maintenance of the indicated report of Child Abuse on the Child Line Registry.

During the period of abuse, Child was under 18 years of age. (ALJ Adjudication and Recommendation, F.F. ¶1.) Petitioner is Child's adoptive mother. (*Id*. at F.F. ¶2.) A "serious physical injury" is defined under the applicable CPS Law as an injury that (1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently. *Former* 23 Pa. C.S. § 6303(a). The record contains photographs documenting the scars on Child's back, testimony from Child concerning the pain she experienced, and testimony from Dr. Sommerfield opining that the injuries would have caused severe pain and impaired Child's ability to physically function. (C.R., August H.T. at 21-22, 69; Exhibit C-2.) The record also demonstrates that the injuries were non-accidental; the photograph and Dr. Sommerfield's testimony document repeated, linear scars on Child's back that reflected a "whipping injury, where somebody had used something to whip someone." (C.R., August H.T. at 21.) The person who had inflicted the injuries was consistently identified by Child as Petitioner to doctors, caseworkers, and in testimony given for this matter. (*See, e.g.* C.R., CYS Report (Exhibit C-3); C.R., August H.T. at 14, 60; C.R. September H.T. at 126-127.) The record contains substantial evidence that Petitioner was the Perpetrator of non-accidental serious physical injury to Child. Petitioner's

10

arguments to the contrary merely amount to an attempt to have this Court reweigh the evidence and to find credible testimony discredited by the fact-finder.

Accordingly, the order of the Bureau denying expungement of an indicated report identifying Petitioner as a Perpetrator of Child Abuse is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.B.,                                    :
                  Petitioner             : **CASE SEALED**
                                         :
            v.                           : No. 2316 C.D. 2015
                                         :
Department of Human Services,            :
                  Respondent             :


# ORDER


AND NOW, this 6th day of June, 2016, the final Order of the Department of Human Services, Bureau of Hearings and Appeals, in the above-captioned matter is AFFIRMED.


_____
**JAMES GARDNER COLINS, Senior Judge**