IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.N.,                               :    **CASE SEALED**
                    Petitioner      :
                                    :
        v.                          :    No.  302 C.D. 2020
                                    :    Submitted:  March 18, 2021
Department of Human Services,       :
                    Respondent      :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                        FILED:  April 27, 2021


        P.N. petitions for review from the February 24, 2020 order of the
Commonwealth of Pennsylvania, Department of Human Services (DHS), Bureau of
Hearings and Appeals (BHA), which adopted the recommendation of the
Administrative Law Judge (ALJ) denying P.N.'s request to expunge the January 4,
2019 indicated report of child abuse filed by the County Children and Youth
Services (CYS), in which P.N. was named as a perpetrator of sexual abuse.  CYS is
the intervenor in the present matter.[1]  Upon review, we affirm.

---

[1] The county agency bears the burden of proving in an expungement case that the actions
of the perpetrator constitute child abuse within the meaning of the statute.  *B.J.K. v. Dep't of Pub.
Welfare*, 773 A.2d 1271 (Pa. Cmwlth. 2001).  "[T]he burden is on the appropriate county agency
to show the indicated report of abuse is accurate and is maintained in a manner consistent with the
**(Footnote continued on next page…)**

# I. Background

On November 6, 2018, CYS received a report of suspected sexual abuse committed by P.N. against a minor child (Child). P.N. is Child's biological grandfather. CYS conducted an investigation of the allegation and filed an indicated report of child abuse, stating:

> The reported allegation was investigated and parties relevant to the case were interviewed. [Child] was interviewed and positively identified [P.N.] by name. [Child] provided consistent and credible statements regarding [P.N.'s] sexual actions toward [Child]. [Child] stated that [P.N.] would show [her] pornographic videos and then force [her] to perform oral sex on [P.N.] [P.N.] was not involved in good faith medical or hygienic care to [Child] at [the] date of [the] incident. One can only conclude that [P.N.'s] actions were for the purpose of sexual arousal and/or gratification. There was no indication that [Child] had been prepared prior to interview nor did [Child's] statement have a rehearsed quality. As a result, the investigation is assigned an INDICATED status as it meets the criteria set forth in the CPSL.

Certified Record (CR)-11, Child Protective Services Investigation Report (capitalization in original).

For our purposes here, it is helpful to understand the following key definitions[2] from the CPSL.

> **Child abuse.--** The term "child abuse" shall mean any of the
>     following:
>         . . . .

_____

[Child Protective Services Law (CPSL), 23 Pa.C.S. §§6301-6387]." *R.J.W. v. Dep't. of Hum. Servs.*, 139 A.3d 270, 282 (Pa. Cmwlth. 2016).

[2] As noted in the ALJ's proposed adjudication, which was adopted by DHS, the alleged incidents of abuse in the present matter occurred prior to January 2015. Thus, the law in effect, including the definitions therein, prior to the 2015 amendments to the CPSL is applicable herein. Certified Record (CR)-83.

(ii)  An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age.
. . . .

**"Expunge."**  To strike out or obliterate entirely so that the expunged information may not be stored, identified or later recovered by any mechanical or electronic means or otherwise.
. . . .

**"Indicated report."**
(1) . . . a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:
(i)  Available medical evidence.
(ii)  The child protective service investigation.
(iii)  An admission of the acts of abuse by the perpetrator.
. . . .

**"Sexual abuse or exploitation."**  Any of the following:
(1)  The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following:
(i)  Looking at the sexual or other intimate parts of a child or another individual for the purpose of arousing or gratifying sexual desire in any individual.
(ii)  Participating in sexually explicit conversation either in person, by telephone, by computer or by a computer-aided device for the purpose of sexual stimulation or gratification of any individual.
(iii)  Actual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual.
(iv)  Actual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming.

23 Pa.C.S. §6303.

P.N. appealed the indicated report and a hearing was conducted before an ALJ.[3] The ALJ found that Child was approximately six to seven years old at the time of alleged sexual abuse, which occurred between 2013 and 2014. CR-79, ALJ's Findings of Fact (FOF) Nos. 1, 2. During the subject period of alleged abuse, Child lived with P.N., her mother, her stepfather, her brother, and another individual identified in the record as C2.F.[4] CR-80, FOF No. 4. As part of the CYS investigation, the CYS caseworker interviewed Child as well as Child's mother and brother and observed a detective's interview of P.N. in regard to the alleged incidents of sexual abuse. CR-80, FOF No. 6. On November 28, 2018, Child was interviewed by a forensic interviewer and indicated that P.N. showed her pornographic videos and forced her to perform oral sex on him on multiple occasions. CR-80, FOF No. 7. As a result of the investigation, CYS filed an indicated report of sexual child abuse in which it identified P.N. as the perpetrator and Child as the subject child. CR-80, FOF No. 8. On April 4, 2019, P.N. requested a fair hearing to expunge the indicated report against him. CR-80, FOF No. 9.

At the time of hearing, Child was 12 years old and was deemed competent to testify. CR-80, FOF No. 10. Child testified that P.N. lived with her and that he would watch her while her mother went to work. CR-80, FOF Nos. 12, 13. Child testified that P.N. made her watch a pornographic video of oral sex when she was six years old and subsequently forced her to perform oral sex on him. CR-

---

[3] The ALJ who conducted the hearing was David A. Dudley, Esquire. However, another ALJ, James L. Bobeck, Esquire, reviewed the testimony and the exhibits from the hearing and wrote the adjudication recommending that P.N.'s appeal be denied. On February 24, 2020, Mr. Dudley, who had, at that point, transitioned into a new position at DHS as a regional manager, signed the order adopting ALJ Bobeck's recommendation.

[4] It is not readily apparent from the record who C2.F is or whether this individual is related to Child in any way.

4

80, FOF Nos. 14, 15. Child testified that this occurred on multiple occasions where P.N. would make her go to his room and forced her to perform oral sex on him. CR-80, FOF No. 16. Child testified that she began getting headaches when she was younger and that she currently experiences stomachaches. CR-81, FOF No. 17.

Child's mother testified that Child requested never to have to go anywhere with P.N. again, after P.N. had taken Child shopping in September 2018. CR-81, FOF No. 18. Child's mother testified to going through Child's phone and finding text messages that Child sent to a friend, in which she told the friend that she had to touch P.N.'s penis. CR-81, FOF No. 19.

The husband of Child's mother, from whom she is now separated, testified that P.N. was still residing in the home in 2015, at the time he moved out due to the separation. CR-81, FOF No. 23. He further testified that while he was still residing in the home, P.N. was responsible for watching Child and her brother about 50% of the time. CR-81, FOF No. 24.

P.N. offered the testimony of character witnesses who testified that P.N. had a reputation in the community for being "sexually appropriate." CR-81, FOF Nos. 25, 26. P.N. denied showing Child pornography and denied directing her to touch him in a sexual manner. CR-81, FOF No. 28. In his findings, the ALJ stated that P.N. testified "that he routinely Facetimed [Child] after moving to another state and once took [Child] shopping in September 2018." CR-81, FOF No. 29.

A licensed clinical social worker (Clinical Social Worker) testified that she evaluated Child after the alleged abuse and that Child told her she experiences digestive issues and stomach pain. CR-82, FOF No. 30. Clinical Social Worker also testified that it would not be abnormal for a victim of sexual abuse to maintain contact with her abuser after the abuse occurred. CR-82, FOF No. 31.

The ALJ found the testimony of Child, the CYS intake supervisor who testified in regard to the notes of the investigating caseworker, Child's mother, Child's mother's husband, and Clinical Social Worker credible. The ALJ also found all of P.N.'s character witnesses to be credible to the extent of their knowledge of P.N.'s reputation for sexual appropriateness. The ALJ found that P.N. was not credible, concluding that "[P.N.'s] testimony is directly contradicted by [Child's] credible testimony that the abuse occurred. Furthermore, his testimony can be deemed self-serving at best and as general denials." CR-82, FOF Nos. 32-40; CR-91.

Based on the above testimony and a review of the evidence, the ALJ recommended that P.N.'s appeal be denied. DHS adopted the ALJ's recommendation in its entirety, and P.N. now petitions this Court for review.[5]

## II. Arguments

### A. P.N.'s Arguments

P.N. argues that the DHS order was based on impermissible credibility determinations because those determinations were made by an ALJ who did not hear the case and, thus, did not observe the witnesses when they testified. P.N. asserts that DHS regional manager, and former ALJ Dudley, not ALJ Bobeck, should have

---

[5] On appeal from an order of DHS, this Court's review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary facts are supported by substantial evidence. *Bucks Cnty. Child. & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990 (Pa. Cmwlth. 2002). "In expungement cases, the testimony of the victim alone constitutes substantial evidence to support an indicated report of child abuse." *R.J.W.* 139 A.3d at 283. The proper inquiry into whether an indicated report of child abuse should be expunged or maintained is whether the report is accurate. *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850 (Pa. Cmwlth. 2005). The county agency bears the burden of proving in an expungement case that the actions of the perpetrator constitute child abuse within the meaning of the statute. The county's evidence must outweigh any contrary evidence. *B.J.K.*, 773 A.2d 1271. This Court will not disturb determinations of weight and credibility on review. *Id*.

made the determinations regarding weight and credibility because ALJ Dudley was the one who heard the case, and ALJ Bobeck did not observe the demeanor of the witnesses. Quoting *In re S.H.*, 96 A.3d 448, 459 (Pa. Cmwlth. 2014), P.N. states:

> Where a fact finder has not seen the witness testify and cannot assess witness demeanor, a mere conclusion on credibility is inadequate. *See Daniels v. Workers'* [*Comp.*] *Appeal* [*Bd.*] *(Tristate Transp.)*, . . . 828 A.2d 1043, 1053 ([Pa.] 2003) (establishing that a workers' compensation judge must articulate an "objective basis for the credibility determination" of an expert who testifies by deposition in order to permit effective appellate review).

P.N.'s Br. at 10. Thus, P.N. asserts that "[a]s the determination of this case was made entirely on credibility, it was error for [ALJ] Bobeck to make the credibility determinations. The findings of ALJ Bobeck must be reversed." *Id*.

Referencing the ALJ's conclusions of law finding him not credible because his testimony was self-serving and consisting of general denials, P.N. argues that "[i]t is fundamentally unfair to expect [him] to give specific denials . . . , particularly when there is a huge range of dates involved" and "[a]ll testimony by appellants in abuse cases could be seen as self-serving." P.N.'s Br. at 11-12. P.N. asserts that, in the present matter, there was no evidence of physical abuse or evidence of "hypersexualization of [Child]," which might indicate sexual abuse had occurred, as "[Child's] testimony was consistent with what a child of her age would understand." P.N.'s Br. at 13-14. P.N. contends that, when properly considered, Child's testimony was not of such a quality as to allow the factfinder to believe it outweighed P.N.'s testimony and evidence. P.N.'s Br. at 14.

Further, P.N. argues that the ALJ's findings ignore information favorable to him, specifically the testimony of Child's mother's husband that he saw no abnormal or unusual behavior between P.N. and Child, as well as the testimony

7

of a neighbor of P.N. and Child, who also had a child around the same age as Child, and who saw no unusual behavior between P.N. and Child. P.N.'s Br. at 14-15. P.N. notes that Child had a younger brother who was in the house at the times of the alleged abuse, and states that "[i]t was unlikely that abuse would have occurred with another child nearby." P.N.'s Br. at 15. P.N. acknowledges that he had an earlier criminal record for a drug delivery offense but states that the ALJ's findings ignore the fact that he had never been accused of, or charged with, sexually inappropriate behavior, arguing that "[c]hild abusers often have some type of prior criminal record that indicates sexually abnormal behavior," and his "lack of a prior record should been considered." P.N.'s Br. at 15-16.

Finally, P.N. argues that, at the hearing before the ALJ, he objected to "any medical/psychiatric conclusions from [Clinical Social Worker] being admitted." P.N.'s Br. at 16. P.N. states that Clinical Social Worker is a licensed clinical social worker who can interview clients and make observations about their physical condition but that there is no legal authority to support the assertion that such social workers can make medical/physical conclusions or render an opinion about sexual assault. P.N. maintains that "[i]n Pennsylvania, medical or psychiatric conclusions have always been left to doctors, psychiatrists and psychologists." P.N.'s Br. at 17. P.N. contends that the ALJ erred by allowing Clinical Social Worker to provide "expert testimony" over his objection to it, and in direct contravention of the ALJ's own prohibition of such testimony when he stated that he was "not going to allow her talk about any type of diagnoses or impressions about a diagnosis." P.N.'s Br. at 17; CR-135.

**B. CYS's Arguments**

In response to P.N.'s arguments, CYS asserts that there was no error in ALJ Bobeck making the credibility determinations in this matter, as adjudicators are allowed to make credibility determinations based upon the reading of a hearing transcript. Further, CYS notes that it is not uncommon for administrative agencies to utilize a system whereby an administrative law judge or hearing examiner presides at the hearing and takes evidence but that a board or commission serves as the ultimate fact finder based on its review of the record. In support of its argument that it was appropriate for ALJ Bobeck to prepare the adjudication in the present matter, CYS quotes the Pennsylvania Code which states, in pertinent part: "'If a presiding officer becomes unavailable to the agency, the agency head will either designate another qualified officer to prepare a proposed report or will cause the record to be certified to it for decision, as may be deemed appropriate.'" CYS's Br. at 10 (quoting 1 Pa. Code §35.203). CYS argues that ALJ Dudley became unavailable after hearing this matter due to his transition from the role of ALJ to Regional Manager of BHA, and, thus, ALJ Bobeck was designated to prepare the proposed adjudication, which ALJ Dudley adopted in a final order as BHA Regional Manager.

CYS further argues that the credibility of its witnesses was apparent in the record, stating:

> The record shows that [Child] had nothing to gain by sharing her account of sexual abuse by [P.N.] At 12 years old, she recounted personal, awkward, and confusing sexual assaults before strangers. She was forced to discuss the events multiple times over the course of an investigation. She was self-conscious about verbally discussing what happened, which is indictive of her truthfulness, and she chose to write down words to avoid further embarrassment. She described details of the assaults in a descriptive manner: how [P.N.] forced her to watch a pornographic video on his phone before he inserted his penis into her

9

mouth, how his hands would be at his sides, and she would kneel on the floor while he either laid on the bed or stood up. She noted that no one else was in the room when the victimization occurred, and that her brother was usually home and in another room of the house.

CYS's Br. at 12-13 (internal citations to the record omitted). CYS adds:

> Where there is no conclusive evidence regarding [a] minor victim's comprehension of [the] offensive acts in question, other factors must be considered to determine whether that victim may have had legitimate reason for delay in reporting. Reasons may include the victim's age, mental and physical condition . . . atmosphere and physical setting in which incidents took place, [and the] extent to which [the] accused may have been in [a] position of authority, domination, or custodial control over [the] victim.

CYS's Br. at 13-14 (citing *Commonwealth v. Ables*, 590 A.2d 334 (Pa. Super. 1991)).

In addition, CYS argues that the credibility determinations in the present matter were corroborated by the timeline, noting that the assaults on Child stopped when P.N. moved out of the home and that Child began talking about her feelings and concerns about seeing P.N. once he moved back to the area. CYS's Br. at 14. Further, CYS states that Clinical Social Worker testified that it is not abnormal for sexual abuse victims to maintain contact with the abuser and that it was common for a child who has experienced sexual abuse to experience the kinds of digestive issues that Child experienced here.

CYS contends that P.N.'s testimony corroborated all of Child's testimony except for the "acts of victimization themselves." CYS's Br. at 16. "He corroborated the details relative to supervision of Child, that he lived in the home and had exclusive access to her, that they would be together in this [sic] room, that he watched pornography, and that he had a smart phone." *Id*. In sum, CYS asserts that the ALJ had every reason to believe Child and to disbelieve P.N. and that it was

10

his prerogative to accept or reject evidence in arriving at his determination in the present matter. CYS adds:

> [P.N.'s] witnesses did not raise any doubt regarding the allegations. [Child's mother's husband] corroborated the timeline established by Child and corroborated that [P.N.] was responsible for watching [Child when she was a] kindergartner. The testimonies of [P.N.'s character witnesses] were generally irrelevant, because the acts of victimization occurred in secret, so [these witnesses did not have] the capacity to reflect upon the truthfulness of the allegations. Furthermore, whether or not [P.N.] appears to be sexually appropriate among adults in public does not negate that [P.N.] took advantage of a vulnerable [c]hild in secret.

CYS's Br. at 17.

CYS rejects P.N.'s argument that Clinical Social Worker testified to matters to which she was not qualified, asserting that she offered an opinion within her training and 18 years of experience as a licensed clinical social worker working with sexual abuse victims and that she did not make any medical or psychiatric conclusions. CYS notes that "[Clinical Social Worker] did not offer an opinion regarding the veracity of [Child]. She offered [an] opinion regarding victim behavior." CYS's Br. at 20. Citing Rule 702 of the Pennsylvania Rules of Evidence, Pa.R.E. 702,[6] and *Portside Investors, L.P. v. Northern Insurance Company of New*

---

[6] Pa.R.E. 702 states:

**Rule 702. Testimony by Expert Witnesses.**
    A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
    (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
    (c) the expert's methodology is generally accepted in the relevant field.

11

*York*, 41 A.3d 1 (Pa. Super. 2011), CYS states "[t]he standard for expert witnesses is liberal." CYS's Br. at 19. CYS adds: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [her] knowledge is 'beyond that possessed by the average layperson' and 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" CYS's Br. at 19 (citing Pa.R.E. 702). CYS states that "[BHA] followed legal precedent when it accepted [Clinical Social Worker] as an expert witness and applied her testimony to the overall determination of the case in a manner fit for its purpose." CYS's Br. at 20.

In sum, CYS requests that this Court affirm the February 24, 2020 order denying P.N.'s appeal so that he remains listed on the ChildLine and Abuse Registry as a perpetrator of sexual abuse.

### III. Discussion

At the outset, we note that "[w]hen the fact finder has determined the weight and credibility of evidence, [this Court] will not disturb such determinations on review." *B.J.K. v. Dep't of Pub. Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001). In addition, the "[w]eight and credibility of evidence are matters solely within the province of the fact finder." *Bedford Cnty. Child. & Youth Servs. v. Dep't of Pub. Welfare*, 613 A.2d 48, 50 (Pa. Cmwlth. 1992). "The BHA is the ultimate fact[]finder in expunction appeals." *F.V.C. v. Dep't of Pub. Welfare,* 987 A.2d 223, 228 (Pa. Cmwlth. 2010). "Absent an abuse of discretion, we will not disturb the BHA's determinations as to credibility and evidentiary weight." *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d at 285. "An abuse of discretion is not merely an error of judgment but occurs, *inter alia,* when the law is misapplied in reaching a

12

conclusion." *Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 213-14 (Pa. Cmwlth. 2003).

P.N. cites *In re S.H.* for the proposition that a fact finder must state an objective basis for his or her credibility determinations when he or she has not seen the witness testify and thus did not have the opportunity to assess the witness's demeanor. In the present matter, we acknowledge that the ALJ who wrote the proposed adjudication was not the same ALJ who presided at the hearing. As to this point, there is no dispute. However, ALJ Bobeck, who wrote the proposed adjudication, reviewed the record, and provided more than mere conclusory statements in support of his credibility determinations.

In his proposed adjudication, ALJ Bobeck provided considerable narrative as to whether, and why, he found each witness credible or not credible. For example, in regard to Child's testimony, ALJ Bobeck wrote:

> She was able to recall specific details and did not exhibit any sort of coaching. In particular, her statements are consistent with her earlier statements made during the [f]orensic [i]nterview in November of 2018. [Child's] statements are not contradicted by any evidence in the record except for [P.N.'s] own statements that he never showed [Child] pornography and forced her to perform oral sex on him.

CR-90, 91.

In addition, ALJ Bobeck summarized P.N.'s testimony, noting that it was "directly contradicted by the subject child's credible testimony that the abuse occurred." CR-91. These are just two examples of the analysis that ALJ Bobeck provided in regard to the testimony of record. However, he did the same in regard to the testimony of the other witnesses, explaining why he did or did not find them credible. Thus, he offered substantially more than mere conclusory statements in support of his credibility determinations. Further, in the present matter, there was

13

the unique circumstance that the individual who ultimately signed off on ALJ Bobeck's proposed adjudication on behalf of BHA, *i.e.*, ALJ Dudley, was the same person who had presided at the hearing when he was an ALJ. And, in his former role, ALJ Dudley had, in fact, had the opportunity to witness the demeanor of the witnesses. Accordingly, we see no error in the credibility determinations leading to BHA's adoption of the ALJ's recommendations which affirmed the indicated report of child abuse against P.N.

Further, we reject P.N.'s argument that the ALJ ignored evidence that was favorable to him. The testimony of his character witnesses added little to his argument, as none of the testimony offered information relative to the veracity of Child's testimony, and P.N.'s behavior in public provided no tangible support for his assertion that he did not sexually abuse Child in private. In addition, we note that "[a]n ALJ is not required to address all the evidence that is presented. *A.P. v. Dep't of Pub. Welfare*, 98 A.3d 736, 744 (Pa. Cmwlth. 2014); *Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993) (factfinder must "make crucial findings of fact on all essential issues necessary for [appellate] review . . . but is not required to address specifically each bit of evidence offered")." *Carbon Cnty. Child. & Youth Servs. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 533 C.D. 2014, filed Oct. 19, 2015), slip op. at 31.[7]

---

[7] Coincidentally, *Carbon County Children and Youth Services* was another case involving the issue of whether ALJ Bobeck, specifically, could render a proposed adjudication when he was not the ALJ who had presided over the hearing. We determined there:

> In short, the [BHA] is the ultimate factfinder, not the ALJ. Here, [BHA] adopted the credibility determinations of ALJ Bobeck, who issued the recommended adjudication. ALJ Bobeck did not observe the witnesses testify, but this does not mean that he could not make credibility determinations. It means only

**(Footnote continued on next page…)**

14

As to P.N.'s contention that the testimony of Clinical Social Worker went beyond her authority as a licensed clinical social worker and that she was not permitted by law to make medical/physical conclusions or render an opinion about sexual assault, we disagree. First, we note that Clinical Social Worker merely confirmed that Child's digestive issues were not unusual for someone who has experienced sexual abuse. She did not opine as to whether the abuse occurred but merely testified to the fact that such a physical reaction could be consistent with same, and she permissibly relied upon her professional experience, over an 18-year period, to make such a statement. There was nothing impermissible or inappropriate about Clinical Social Worker's testimony in this regard, and while important to CYS's case, this testimony was not obviously dispositive to the outcome. Further, the Commonwealth's Administrative Agency Law[8] reads as follows: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." 2 Pa.C.S. §505 (relating to evidence and cross-examination). Clinical Social Worker's testimony was relevant and offered probative value, and she was subject to cross-examination. *See* CR-144. Given the relaxed evidentiary standards applicable in

---

that he had to explain his credibility determinations by identifying his reasons for accepting or rejecting a particular witness's testimony.

*Carbon Cnty. Child. & Youth Servs. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 533 C.D. 2014, filed Oct. 19, 2015), slip op. at 26. We added: "Notably, in *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008), this Court further explained that 'even where [the factfinder] has based a credibility determination on a cold record, substantial deference is due.'" *Carbon Cnty. Child. & Youth Servs.*, slip op. at 26.

[8] Administrative Agency Law, 2 Pa.C.S. §§501-508, 701-704.

15

administrative settings, and the nature of Clinical Social Worker's testimony, the ALJ and BHA did not err by affording the testimony its proper consideration.

Based on our review of the law and the evidence of record in the present matter, we see no error in BHA's order affirming the indicated report of child abuse by CYS.

## IV. Conclusion

For the reasons above, we affirm the February 24, 2020 order of BHA denying P.N.'s appeal to expunge the January 4, 2019 indicated report of child abuse filed by CYS.

_____
J. ANDREW CROMPTON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.N.,                                    :    **CASE SEALED**
                        Petitioner        :
                                         :
        v.                               :    No.  302 C.D. 2020
                                         :
Department of Human Services,            :
                        Respondent        :


# **O R D E R**

     **AND NOW**, this 27th day of April 2021, the February 24, 2020 order of the Department of Human Services is **AFFIRMED**.


                                    _____
                                    J. ANDREW CROMPTON, Judge